1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

ALBERTO AVILA-CARDENAS,

9

Petitioner,

CASE NO. C19-1148 MJP-BAT

10

v.

**REPORT AND
RECOMMENDATION**

11

JERI BOE,

12

Respondent.

13

Petitioner Alberto Avila-Cardenas seeks 28 U.S.C. § 2254 habeas relief from his

14

conviction for three counts of First Degree Murder and 1140 month sentence in King County

15

Superior Court Cause Number 11-1-05713-1-KNT. *See* Habeas Petition Dkt. 4 at 1. Petitioner

16

also moves the Court to appoint counsel and grant leave to conduct discovery and expand the

17

record. Dkt. 17.

18

In an Exhibit attached to petitioner's *pro se* federal habeas petition, ("Attachment")

19

petitioner raises the following grounds for relief. Dkt. 4.

20

    1.    The trial court erred by failing to declare a mistrial after a Tacoma Police Officer
            impugned the presumption of innocence in front of the entire venire. *Id.* at 1.

21

22

    2.    Petitioner was denied effective assistance of counsel by trial because:

23

          a)    Defense counsel delivered two promises of exculpatory evidence to the
               jury but failed to keep these promises. *Id.* at 2.

b)      Defense counsel told jurors they would hear Avila denied any involvement in the crimes during a police interview. *Id.* at 2.

c)      Defense counsel made unfulfilled promises in the opening statement about Johnny Bryant, a material witness with relevant testimonial evidence. *Id.* at 3.

d)      Defense counsel failed to obtain a material witness warrant for Johnny Bryant. *Id.* at 4.

e)      Defense counsel was ineffective at petitioner's Criminal Rule 3.5 and 3.6 hearings. *Id.*

f)      Defense counsel failed to object to Detective Johnson's false testimony about a name and number on a phone contact list. *Id.* at 5.

g)      Defense counsel hid information from the jury showing the police bribed a witness with a "S-Visa" in exchange for providing testimony against petitioner. *Id.*

h)      Defense counsel was not ready for trial and the court denied a continuance needed to obtain all discovery. *Id.* at 6.

3.      The Trial Court erred by denying a motion for mistrial when the prosecution repeatedly made prejudicial references to evidence excluded under ER 404(b). *Id.* at 6.

4.      The admission of the co-defendant's statement on plea of guilty violates petitioner's Sixth Amendment right to confront witnesses against him. *Id.* at 8.

5.      The prosecuting attorney engaged in misconduct by:

a)      Eliciting evidence in violation of a motion in limine order. *Id.* at 9.

b)      Making prejudicial race and class bias arguments. *Id.*

c)      Bribing a witness by offering a S-Visa in exchange for testimony. *Id.*

6.      Cumulative error deprived petitioner a fair trial. *Id.* at 11.

7.      The trial judge denied petitioner due process by increasing punishment based upon petitioner's right against self-incrimination. *Id.*

8.      Petitioner was prejudiced by a deficient search warrant. *Id.*

a)      The search warrant does not pass the *Aguilar-Spinelli* test.

REPORT AND RECOMMENDATION - 2

      b)     The detective's affidavit in support of the warrant disregarded the truth regarding statements by Mark Salvino and Johnny Bryant. *Id.* at 13.

      c)     Detective Punzalen drafted a misleading search warrant affidavit. *Id*. at 14.

9.     The firearm and cell phone evidence were misleading and should have been suppressed. *Id*. at 15.

      a)     The tool mark evidence expert gave misleading testimony. *Id.*

      b)     The cell phone evidence is not petitioner's. *Id*. at 16.

10.    The Government engaged in misconduct.

      a)     The government bribed a witness with a S-visa. *Id*. at 17.

      b)     The trial court improperly excluded exculpatory evidence. *Id*. at 18.

      c)     Evidence of zip-ties was improperly admitted.

      d)     The state obtained a custodial statement in the absence of petitioner's lawyer. *Id*. at 19.

      e)     Detective Johnson lied to the jury. *Id*. at 19.

      f)     Police officers conducted interviews even though they are not certified court interpreters. *Id*. at 20.

11.    The murder weapon was mishandled and should have been suppressed due to a lack of a proper chain of custody. *Id*. at 20.

12.    There is new evidence regarding Johnny Bryant. *Id*. at 21.

13.    The prosecutor engaged in misconduct by filing a no-contact order for Ms. Miranda against petitioner. *Id*. at 22.

14.    Hair samples and fingerprints were not tested. *Id*.

15.    Defense counsel colluded with the prosecutor to violate petitioner's right to a speedy trial. *Id*. at 23.

Respondent acknowledges the habeas complaint is timely, and grounds for relief 2(a), 4, 7, 10(a) and (3) and 11 are properly before the Court. However, respondent contends grounds for relief 1,3,5,8, 12, 13, 14 and 15 should be dismissed because they were presented to the state

REPORT AND RECOMMENDATION - 3

1    courts only as state law claims or without any legal support. Because this Court may only review

2    federal constitutional claims that were fully and fairly presented to the highest state court,

3    respondent contends the Court should deny these claims as unexhausted, and procedurally

4    defaulted. Dkt. 12 at 7. Respondent also contends grounds for relief 2(b), (c), (d), (e), (f), 6, 9,

5    and 10(b), (c), (d), and (f) were not presented to the highest state court and the Court should

6    therefore also deny these claims on the grounds as unexhausted and procedurally defaulted. *Id.* at

7    7-8.

8         For the reasons below, the Court recommends the habeas petition, the motions to conduct

9    discovery and expand the record, and appoint counsel be denied and that the case be dismissed.

10    The Court also recommends denying issuance of a certificate of appealability.

11                             **BACKGROUND**

12         The Washington Court of Appeals summarized the facts regarding petitioner's

13    case as follows:

14           Jesus Bejar–Avila, Yazmani Quezada–Ortiz, and Cristian Rangel
              were coworkers at Lake Union Wholesale Florists. The three men

15          worked together on December 12, 2010. They did not return home
              from work and were not seen alive again. Family members

16          reported the men's disappearance to police.

17          In the ensuing investigation, Avila–Cardenas became a person of
              interest. Pursuant to a warrant, police searched his home and found

18          a 9 millimeter gun and ammunition. Avila–Cardenas's long term
              girlfriend, Guadalupe Miranda–Cruz, told police that Avila–

19          Cardenas had brandished the weapon during an argument and fired
              a bullet into the grass in the backyard. Police recovered a 9

20          millimeter shell casing from the area she indicated.

21          A few months later, a worker found human remains on the grounds
              of a wholesale plant nursery. Police recovered three bodies and

22          identified them as Bejar–Avila, Quezada–Ortiz, and Rangel. Police
              also recovered 9 millimeter shell casings from the site. Forensic

23          testing determined that the bullet casings recovered from the crime
              scene matched the casing found in Avila–Cardenas's backyard. All

1

of the casings had been fired by the gun found in Avila–Cardenas's
home. Investigators found blood spatter in the barrel of the gun.
Deoxyribonucleic acid (DNA) testing determined that the blood
inside the gun was from Rangel.

2

3

In addition to Avila–Cardenas, police suspected that Alfredo
Velez–Fombona and Clemente Benitez were involved in the crime.
Cell phone records showed that, on the day the victims
disappeared, the cell phones associated with Avila–Cardenas,
Velez–Fombona, and Benitez all traveled from Avila–Cardenas's
home to the area of Lake Union Wholesale Florists. All three cell
phones then traveled to the vicinity of the nursery where the bodies
were recovered.

4

5

6

7

8

Police arrested Avila–Cardenas and Velez–Fombona[1] Velez–
Fombona pleaded guilty to second degree murder. Avila–Cardenas
went to trial and was convicted of three counts of first degree
murder.

9

10

*See* Dkt 13, Exhibit 3 and *State v. Alberto Avila-Cardenas*, 200 Wash. App 1025, (Div. I, 2017).

11

## EVIDENTIARY HEARING

12

Petitioner contends the Court should grant leave to conduct discovery and order an

13

evidentiary hearing "to resolve the material disputed facts." Dkt. 4 at 16; Dkt. 17. An evidentiary

14

hearing is precluded by *Cullen v. Pinholster*, 563 U.S. 170 (2011). As discussed below, the

15

claims petitioner properly presented to the state courts were adjudicated on the merits, and the

16

state courts' rejection of the claims are neither contrary to or an unreasonable application of

17

clearly established Supreme Court law or based upon an unreasonable determination of the facts

18

given the record. Under these circumstances, this court is barred from conducting an evidentiary

19

hearing to further develop the facts on petitioner's claims. *Pinholster* at 185 ("If a claim has been

20

adjudicated on the merits by a state court, a federal habeas petitioner must overcome the

21

22

23

---

[1] "Police could not locate Benitez and he remained at large."

1    limitations of § 2254(d)(1) on the record that was before the state court.")[2]; see also Sully v.

2    Ayers, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to

3    decide whether a district court may ever choose to hold an evidentiary hearing before it

4    determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the

5    district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks

6    and citation omitted).

7        Additionally, petitioner desire to further develop or supplement the record through

8    attachments and exhibits submitted to this court is also barred under Pinholster. See

9    Runningeagle v. Ryan, 686 F.3d 758, 773–774 (9th Cir. 2012) (Pinholster governs discovery,

10   expansion of the record and evidentiary hearings); Neng Saypao Pha v. Swarthout, No. 2:13-CV-

11   1133 MCE GGH, 2015 WL 1787569, at *6 (E.D. Cal. Apr. 20, 2015), subsequently aff'd sub

12   nom. Neng Saypropha v. Gary Swarthout, Warden, No. 15-16028, 2016 WL 4073503 (9th Cir.

13   Aug. 1, 2016) ("Pinholster applies to all requests for evidentiary hearing (and discovery) no

14   matter the subject of the claim; it worked a sea change in federal habeas corpus practice."); Virgo

15   v. Frauenheim, 2018 WL 3831003 at * 12 (E.D. Cal., August 13, 2018) (The article petitioner

16   attached to federal habeas pleading is precluded by Pinholster's bar to supplementing facts

17   adduced for the first time in federal proceedings where claim is adjudicated on the merits.).

18   Accordingly, the Court may not consider the exhibits, declarations and attachments petitioner

19   submitted in support of relief, not previously considered by the state courts. Dkts. 41, 43.

20

21   [2] The Pinholster limitation also applies to claims brought under § 2254(d)(2). See Gulbrandson
     v. Ryan, 738 F.3d 976, 993, n. 6 (9th Cir. 2013) ("Pinholster and the statutory text make clear

22   that this evidentiary limitation is applicable to § 2254(d)(2) claims as well. See § 2254(d)(2)
     (allowing for habeas relief if the state court decision "was based on an unreasonable

23   determination of the facts in light of the evidence presented in the State court proceeding.")
     (emphasis added); Pinholster, 131 S.Ct. at 1400 n. 7 (comparing (d)(1) to (d)(2) and stating that
     (d)(1) "also is plainly limited to the state-court record.") (emphasis added)).

1    In sum, in determining whether relief is available under 28 U.S.C. § 2254(d)(1) or (2), the

2    Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170

3    (2011). An evidentiary hearing is not required if the allegations would not entitle petitioner to

4    relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record

5    refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is

6    not required to hold an evidentiary hearing." *Id.*  Here, the Court concludes petitioner is not

7    entitled to relief and the habeas claims may be resolved by review of the existing record without

8    further discovery or supplementation of evidence presented for the first time; accordingly no

9    evidentiary hearing is required because petitioner's allegations do not entitle him to habeas relief.

10   The Court also concludes any request for evidentiary hearing, discovery, and to supplement the

11   state court record should be denied. *See also Kemp v. Ryan*, 638 F.3d 1245, 1269 (9th Cir. 2011)

12   (When a habeas petitioner is not entitled to an evidentiary hearing, then the petitioner's request

13   for discovery is futile, and the court does not abuse its discretion in denying it.).

**FEDERAL HABEAS STANDARDS**

14

15   **A.    Habeas Review Standards**

16   A federal Court may not grant habeas relief unless the state court decision: "(1) was

17   contrary to clearly established federal law as determined by the Supreme Court, (2) involved an

18   unreasonable application of such law, or (3) . . . was based on an unreasonable determination of

19   the facts in light of the record before the state court." *See Fairbank v. Ayers*, 650 F.3d 1243,

20   1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2).

21   A state court's decision is contrary to clearly established federal law if it contradicts the

22   law set forth by the United States Supreme Court or reaches a result different than that reached

23   by the Supreme Court on materially indistinguishable facts. *See Terry Williams v. Taylor*, 529

REPORT AND RECOMMENDATION - 7

1    U.S. 362, 405–06 (2000). A state court's decision is an unreasonable application of clearly

2    established federal law when the state court identifies the correct legal rule but applies it to a new

3    set of facts in a way that is objectively unreasonable. *See id.* at 407. "Clearly established federal

4    law means the governing legal principle or principles set forth by the Supreme Court at the time

5    the state court renders its decision." *Xiong v. Felker*, 681 F.3d 1067, 1073 (9th Cir. 2012)

6    (citation omitted). A court's determination of clearly-established law rests on a Supreme Court

7    holding, not on circuit decisions. *See Wright v. VanPatten*, 552 U.S. 120, 125–26 (2008) (A

8    Supreme Court case must have "squarely address[ed]" a certain issue and given a "clear answer"

9    regarding the applicable legal rule to create "clearly established federal law.).

10        Turning to habeas relief based upon a claim the state court unreasonably determined the

11    facts, "a federal court may not second-guess a state court's fact-finding process unless, after

12    review of the state-court record, it determines that the state court was not merely wrong, but

13    actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El*

14    *I*, 537 U.S. 322, 340 (2010) ("[A] decision adjudicated on the merits in a state court and based on

15    a factual determination will not be overturned on factual grounds unless objectively unreasonable

16    in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

17        Additionally, state-court factual findings are presumed correct. This is a presumption the

18    petitioner must overcome by clear and convincing evidence. *Davis v. Ayala*, 135 S. Ct. 2187,

19    2199–2200 (2015) (quotation and citation omitted). Consequently, even if reasonable minds

20    reviewing the record might disagree about a state court's factual determination, a federal habeas

21    court cannot supersede the trial court's determination." *Id.* at 2201.

22        In considering a habeas petition, a federal court reviews the "last reasoned decision" from

23    the state court. Where the final state court decision contains no reasoning, the court looks to the

1    last decision from the state court that provides a reasoned explanation of the issue. *See*

2    *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Where no state court decision

3    articulates its underlying reasoning, "the habeas petitioner's burden still must be met by showing

4    there was no reasonable basis for the state court to deny relief. . . ." *Harrington v. Richter*, 562

5    U.S. 86, 98 (2011). When the state courts fail to provide reasoning for its decisions, a federal

6    court must independently review the record and ascertain whether the state court's decision was

7    objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (citation and

8    internal quotation marks omitted)." "Crucially, this is not a de novo review of the constitutional

9    question. Rather, even a strong case for relief does not mean the state court's contrary conclusion

10   was unreasonable." *Id*. (citations and internal quotation marks omitted).

11          Finally, a federal court's review of a habeas claim is limited to the facts before the state

12   court and the petitioner is not entitled to an evidentiary hearing in federal court. *See Cullen v.*

13   *Pinholster*, 131 S. Ct.1388, 1398 (2011). "An evidentiary hearing may be appropriate after

14   *Pinholster* only if the district court first determines that the state court made an unreasonable

15   application of federal law or made an unreasonable determination of facts based on the record

16   before it." *Grecu v. Evans*, No. 07-0780-EMC, 2014 WL 5395783, at *17 (N.D. Cal. Oct. 22,

17   2014) (unreported).

18   **B.    Exhaustion Requirement**

19          Petitioner may obtain federal habeas relief only if he has exhausted state judicial

20   remedies. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). The exhaustion requirement is a

21   prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A).[3]

22

23   _____

[3] This section states that "An application for a writ of habeas corpus on behalf of a person in
custody to the judgement of a State court shall not be granted unless it appears that —(A) the
applicant has exhausted the remedies available in the courts of the State."

1    *See Rose v. Lundy*, 455 U.S. 509 (1982). The exhaustion doctrine is based on a policy of federal

2    and state comity that is designed to give state courts the initial opportunity to correct alleged

3    constitutional deprivations. *See Picard v. Connor*, 404 U.S. 270, 275 (1971).

4          The exhaustion doctrine requires a petitioner to do two separate things. First, to exhaust a

5    federal habeas claim, a petitioner must properly raise it in each appropriate state court, including

6    the state intermediate court of appeals and the state's highest court. *Baldwin v. Reese,* 541 U.S.

7    27, 29 (2004).

8          And second, the exhaustion doctrine requires a petitioner to have fairly presented each

9    federal claim to the state court. *Picard v. Connor*, 404 U.S. at 275. The fair presentation

10   requirement requires a petitioner to fully and fairly present federal claims for relief to the state

11   courts. A petitioner that raises a state claim which is merely similar to a federal claim fails to

12   meet the fair presentation requirement. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (State claim

13   based on state evidence rule admitting inflammatory and irrelevant testimony did not alert state

14   court that petitioner was denied due process in violation of the Fourteenth Amendment).

15   Additionally, it is not enough that all the facts necessary to support the federal claim were before

16   the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless,* 459

17   U.S. 4, 6 (1982) (Argument that jury instructions contravened holding in state case insufficient to

18   show state court was apprised of federal constitutional violation).

19         A petitioner's mere mention of the federal Constitution as a whole, without specifying an

20   applicable provision, or an underlying federal legal theory, does not suffice to exhaust the federal

21   claim. *See Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005) (holding that exhaustion

22   demands more than a citation to a general constitutional provision, detached from any

23   articulation of the underlying federal legal theory).

1    A federal claim is not fairly presented where the petitioner mentions a broad

2    constitutional concept, such as due process. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th

3    Cir.1999) (holding that "general appeals to broad constitutional principles, such as due process,

4    equal protection, and the right to a fair trial, are insufficient to establish exhaustion.").

5      "When a petitioner does not label his claim as federal, the mere citation to a state court

6    case that engages in both a state and federal constitutional analysis does not suffice to exhaust

7    the federal claim." *Field v. Waddington*, 401 F.3d 1018, 1023 (9th Cir. 2005) citing *Casey v.*

8    *Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004) ("For a federal issue to be presented by the

9    citation of a state decision dealing with both state and federal issues relevant to the claim, the

10   citation must be accompanied by some clear indication that the case involves federal issues.").

11   In the Ninth Circuit, a federal court should examine what the petitioner asserted in the

12   state court and the context in which the assertion was made. The petitioner must explicitly alert

13   the state court that he or she is making a federal constitutional claim. *Galvan v. Alaska Dept. of*

14   *Corrections,* 397 F3d 1198, 1205 (9th Cir. 2005) ("If a party wants a state court to decide

15   whether she was deprived of a federal constitutional right, she has to say so. It has to be clear

16   from the petition filed at each level in the state court system that the petitioner is claiming the

17   violation of the federal constitution that the petitioner subsequently claims in the federal habeas

18   petition."). In short, unless a petitioner presented his or her federal habeas claims fully and fairly

19   to the state courts, the federal court is without jurisdiction to consider federal habeas claims for

20   lack of exhaustion. *See* 28 U.S.C. § 2254(b)(1).

21   **C.    Procedural Bar and Default Doctrines**

22   When a petitioner fails to exhaust his or her federal habeas claims and the state court to

23   which petitioner must present the habeas claims to satisfy the exhaustion requirement would now

1   procedurally bar the claims, the claims are procedurally defaulted and federal habeas relief is

2   unavailable. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Petitioner's direct appeal and

3   personal restraint petition were both denied by the state courts. If the Court finds petitioner failed

4   to exhaust some of his claims, he would have to return to the state courts and fully and fairly

5   present them to the state courts before this Court could consider them on habeas review.

6          Washington law sets forth two procedural bars to a petitioner seeking collateral relief

7   from a criminal conviction and sentence. First under Washington law a petition for collateral

8   attack on a judgment and sentence in a criminal case must be filed within one year after the

9   judgment becomes final. *See* RCW 10.73.090(1) ("No petition or motion for collateral attack on

10  a judgment and sentence in a criminal case may be filed more than one year after the judgment

11  becomes final if the judgment and sentence is valid on its face and was rendered by a court of

12  competent jurisdiction."); *See also In re Haghighi*, 178 Wn.2d 435, 445-46 (2013) (Haghighi

13  timely filed a PRP but the amended PRP was filed more than one year after his appeal became

14  final and the claims therein are therefore time barred).

15         Collateral attack in Washington includes the filing of a Personal Restraint Petition

16  ("PRP"). RCW 10.73.090 is a mandatory rule that acts as a bar to appellate court consideration

17  of PRPs filed after the limitation period has passed, unless the petitioner demonstrates the PRP

18  is based on one of the exemptions enumerated in RCW 10.73.100. *See In Re Bonds*, 165 Wn2d.

19  135, 140 (2008). The time limitations set forth in RCW 10.73.090 have been deemed an

20  independent and adequate state ground to bar federal habeas review. *See Shumway v. Payne*, 223

21  F.3d 982, 989 (9th Cir. 2000) ("Shumway has failed to demonstrate that Wash. Rev. Code §

22  10.73.090 is not an adequate and independent state procedural rule that bars her claims."). Under

23  Washington law "a judgment becomes final, among other things, when 'an appellate court issues

REPORT AND RECOMMENDATION - 12

1    its mandate disposing of a timely direct appeal from the conviction.' RCW 10.73.090(3)(b)."

2    *Matter of Sandoval*, 189 Wn.2d 811, 820 (2018).

3        Here, the Washington Supreme Court denied review of petitioner's direct appeal on July

4    7, 2018, and the Washington Court of Appeals issued a mandate terminating review in the case

5    on February 16, 2018. Dkt. 13, Exhibit 11, 12. Petitioner's state judgment and conviction thus

6    became final on February 16, 2018.

7        Additionally, Washington law imposes limitations on the number of PRPs a petitioner

8    may file. Under Washington Rules of Appellate Procedure (RAP) 16.4(d), "no more than one

9    petition for similar relief on behalf of the same petitioner will be entertained without good cause

10    shown." Under RCW 10.73.140:

11
12
13
14
15
16
17
18
19
20

> If a person has previously filed a petition for personal restraint, the court of appeals will not consider the petition unless the person certifies that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition. Upon receipt of a personal restraint petition, the court of appeals shall review the petition and determine whether the person has previously filed a petition or petitions and if so, compare them. If upon review, the court of appeals finds that the petitioner has previously raised the same grounds for review, or that the petitioner has failed to show good cause why the ground was not raised earlier, the court of appeals shall dismiss the petition on its own motion without requiring the state to respond to the petition. Upon receipt of a first or subsequent petition, the court of appeals shall, whenever possible, review the petition and determine if the petition is based on frivolous grounds. If frivolous, the court of appeals shall dismiss the petition on its own motion without first requiring the state to respond to the petition.

21        Here, petitioner filed a PRP in 2018 raising eight issues. Dkt. 13, Exhibit 13. The PRP

22    was dismissed as frivolous and the Washington Supreme Court denied review. *Id.,* Exhibit 18. If

23    petitioner must return to the state courts to exhaust his federal habeas claims, he would normally

first present those claims to the Washington Court of Appeals.

REPORT AND RECOMMENDATION - 13

If the Washington Court of Appeals determines review is barred under RCW 10.73.140 but that RAP 16.4(d) might allow this court to entertain the petition, the Court of Appeals could transfer the PRP to the Washington Supreme Court. *See In re Restraint of Perkins*, 143 Wn.2d 261, 266 (2001). In considering a transferred PRP, the Washington Supreme Court is constrained by RAP 16.4(d) which prohibits the filing of more than one PRP for similar relief on behalf absent good cause shown. "A successive petition seeks 'similar relief' if it raises matters which have been 'previously heard and determined' on the merits or 'if there has been an abuse of the writ or motion remedy.'" *In re Pers. Restraint of Jeffries*, 114 Wash.2d 485, 488 (1990) (quoting *In re Pers. Restraint of Haverty*, 101 Wash.2d 498, 503 (1984).

The focus on the above state procedural grounds to reject a federal claim is crucial. This is because federal habeas relief is unavailable if (1) there is a state procedural bar that petitioner cannot overcome, and (2) the state judgment thus rests on independent and adequate state procedural grounds. *Walker v. Martin*, 562 U.S. 307, 316-17 (2011). Hence federal habeas relief is unavailable if the Court concludes Washington law which requires a PRP be filed within one year from the date state judgment is final, and which also limits the number of PRPs a petitioner may file, are independent and adequate state court procedural bars exhausting the claims in this this case. *Harris v. Reed*, 489 U.S. 255, 261–262 (1989).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar. Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. Respondent has pled this in its response. *See* Dkt. 12 at 14-16. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

REPORT AND RECOMMENDATION - 14

1    including citation to authority demonstrating inconsistent application of the rule. Once having

2    done so, however, the ultimate burden is the state's. *Id*. at 584–585.

3           If an unexhausted claim is procedurally defaulted, a federal court will generally be barred

4    from addressing the merits of defaulted habeas claims. *Williams v. Stewart*, 441 F.3d 1030, 1061

5    (9th Cir. 2006). However, a petitioner may overcome procedural default and obtain federal

6    review if he or she presents sufficient evidence to "demonstrate that failure to consider the

7    claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This

8    requires the petitioner to show the case falls within the "narrow class of cases . . . [involving]

9    extraordinary instances when a constitutional violation probably has caused the conviction of one

10   innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). In order to pass through

11   the actual innocence gateway noted in *Schlup v. Delo*, 513 U.S. 298, 314 (1995) petitioner must

12   show, given all available evidence, it is more likely than not that no reasonable juror would

13   convict him of the relevant crime. *See House v. Bell*, 547 U.S. 518, (2006).

14          A petitioner may also overcome procedural default by making "an adequate showing of

15   cause and prejudice" for his failure to exhaust his state court remedies. *Strickler v. Greene*, 527

16   U.S. 263, 282 (1999). To make this showing, petitioner must "demonstrate cause for the default

17   and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at

18   750. To establish cause for a procedural default, a petitioner must demonstrate the default is due

19   to an external objective factor that "'cannot fairly be attributed to him." *See Coleman*, 501 U.S. at

20   753 ("'[W]e think that the existence of cause for a procedural default must ordinarily turn on

21   whether the prisoner can show that some objective factor external to the defense.'").

22          To demonstrate "prejudice, "'the habeas petitioner must show 'not merely that the errors

23   at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial

REPORT AND RECOMMENDATION - 15

1   disadvantage, infecting his entire trial with error of constitutional dimensions.'"). *Murray v.*

2   *Carrier*, 477 U.S. 478, 494 (1986) citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

3          The habeas petition in this case raises several grounds for relief that were not fully and

4   fairly presented to the highest state court. Because more than one year has passed since the state

5   judgment became final in February 2018, petitioner cannot return to state court and attempt to

6   exhaust his claims due to the Washington's one year state statute of limitation for filing a PRP.

7   The unexhausted claims are accordingly defaulted and now procedurally barred. No exception

8   exists to allow expansion of time to seek PRP relief because petitioner knew about the

9   unexhausted claims when he was in the state courts and simply failed to present them in a

10  manner that preserved them for federal review.

11                                    **DISCUSSION**

12         The exhaustion doctrine allows the Court to consider only federal constitutional claims

13  that were fully and fairly presented to the state courts, including the highest state court.

14  Respondent contends grounds for relief 1, 2(b), (c), (d), (e), (f), 3, 5, 6, 8, 9, and 10(b), (c), (d),

15  and (f), 12, 13, 14 and 15 were not fully and fairly presented to the highest state court and the

16  Court should therefore deny these claims as unexhausted and procedurally defaulted. Dkt. 12 at

17  7-8. Respondent agrees the other grounds for relief are exhausted.

18         The record shows the following claims were presented to the Washington Supreme

19  Court. After the Washington Court of Appeals affirmed petitioner's conviction and sentence on

20  direct review, petitioner's counsel filed a petition for review in the Washington Supreme Court

21  raising the following arguments:

22             1.    The former codefendants please statement violated
                     petitioner's confrontation rights.
23

REPORT AND RECOMMENDATION - 16

1

2      2.      Under *State v. Grief*, counsel was ineffective for making promises in opening statement that were not kept.

3      3.      The Court of Appeals misstated the facts and misapplied the law regarding the motions in limine.

4      4.      The Court of Appeals decision conflicts with caselaw on prosecutorial misconduct.

5

6      5.      Petitioner's due process rights were violated when he exercised his right against self-incrimination at sentencing.

7      6.      The entire venire was tainted by a statement made by a prospective juror who was a retired policeman.

8

9    Dkt. 13 (state court record), Exhibit 10 at 330.

10      In an appendix attached to counsel's petition for review, petitioner submitted numerous claims including:

11

12      1.      The marital privilege was violated.

13      2.      The search warrant did not meet the *Agular-Spinelli* test.

14      3.      The firearm and cell phone evidence should have been suppressed.

15      4.      Counsel was ineffective for a) failing to obtain a material witness warrant for Johnny Bryant, (441)

16

17      5.      The government engaged in misconduct.

18      6.      Petitioner was denied a fair trial because he could not use an exculpatory statement made by a co-defendant.

19      7.      The media violated a court order.

20      8.      Counsel was ineffective at the Criminal Rule 3.5 and 3.6 hearings.

21

22      9.      The amended information was defective.

23    *Id.* at 396-433.

After the Washington Supreme Court denied review, petitioner filed a personal restraint petition (PRP) in the Washington Court of Appeals. *Id.* Exhibit 13. The Washington Court of Appeals dismissed the PRP, exhibit 16, and petitioner filed a motion for review in the Washington Supreme Court raising the following grounds for relief:

1. The chain of custody for the murder weapon was broken.

2. The government engaged in misconduct by offering an S-Visa to a witness, and by lying to the jury about petitioner's cell phone.

3. The prosecutor and police engaged in misconduct.

4. Johnny Bryant provided exculpatory information but petitioner's lawyer did not get a warrant to bring him to testify.

5. The prosecutor engaged in misconduct by putting a no-contact order on Ms. Miranda.

6. The search warrant was based in false information.

7. Hair samples were not tested.

8. Petitioner's right to a speedy trial was violated.

*Id.* Exhibit 17, at 759-766. The Court addresses, in turn, each of the grounds for relief set forth in petitioner's habeas petition.

**A.      Ground for Relief One: The Venire was Tainted by a Prospective Juror's Comments**

Petitioner alleges a prospective juror made a statement during jury selection that tainted the entire jury panel and that the trial judge should have but erroneously failed to seat an entirely new jury panel. Dkt. 4 Attachment at 1. Respondent contends the claim is unexhausted because petitioner presented the claim to the Washington Supreme Court "based on state-court decisions," and failed to articulate federal grounds. Dkt. 12 at 17. The record establishes

REPORT AND RECOMMENDATION - 18

1    petitioner's counsel argued the Washington Supreme Court should grant review because a

2    prospective juror made a comment that tainted the entire venire. Dkt. 13, Exhibit 10 at 359-60.

3    Petitioner's counsel contended the prospective juror's comment was akin to a "trial irregularity"

4    citing in support the following state cases: *State v. Bourgeois*, 133 Wn.2d 389 (1997) and *State v.*

5    *Rempel*, 53 Wn.App. 799 (1989).

6        These cases did not alert the Washington Supreme Court petitioner was presenting a

7    federal claim the entire venire in petitioner's case was tainted by a prospective juror's comments.

8    The *Bourgeois* case addresses ex-parte contact between a juror and the court bailiff; spectators

9    glaring at witnesses and gesturing as of to form a gun; and improper discussions during

10   deliberations about these gestures. *Bourgeois*, 133 Wn.2d at 407. The decision did not address

11   the circumstances present in this case—a comment made by a prospective juror during voir dire.

12   Additionally, the *Bourgeois* decision does not indicate *Bourgeois* case was raising a federal

13   constitutional claim, does not refer to the United States Constitution, and instead cites

14   exclusively to state court decisions.

15       *State v. Rempel*, involves a juror who unintentionally said during jury selection she did

16   not know the victim but later informed the court she did when the victim appeared to testify.

17   *Rempel*, 53 Wn.App. at 801. The focus of the defendant's argument in *Rempel* was Article 1,

18   section 21 of the Washington Constitution was violated because a defendant has a right to a jury

19   "free of disqualifying jury misconduct." *Id.* at 802. The Court in *Rempel* did cite to a U.S.

20   Supreme Court case but only to acknowledge the principle that invalidating a conviction when a

21   person gives an honest mistaken response to a question is insisting on something the judicial

22   system cannot be expected to give. *Id.* citing *McDonough Power Equip., Inc. v. Greenwood*, 464

23   U.S. 548, 555, (1984). As with the *Bourgeois* case, *Rempel* did not involve the issue of whether

1    the United States Constitution is violated when a prospective juror makes a statement in front of

2    the entire venire and did not provide a federal analysis of the habeas claim presented here.

3    Accordingly, counsel's citation to *Rempel* and *Bourgeois* did not fairly inform the Washington

4    Supreme Court petitioner was presenting the same federal claim he now asserts in his habeas

5    petition. This ground for relief is thus unexhausted and procedurally defaulted because the one-

6    year time period to seek collateral relief in the state courts has expired.

7    **B**.        **Ground for Relief Two: Effectiveness of Trial Counsel**

8            Respondent contends petitioner did not present to the Washington Supreme Court the

9    following claims in ground for relief two:  Trial counsel was ineffective by: (b) telling the jury it

10   would hear Avila denied any involvement in the crimes during a police interview. Dkt. 4, Exhibit

11   at 2, *Id.;* (c) making unfulfilled promises in the opening statement about Johnny Bryant, a

12   material witness with relevant testimonial evidence. *Id.* at 3; (d) failing to obtain a material

13   witness warrant for Johnny Bryant. *Id.* at 4; (e) performing poorly at the criminal Rule 3.5 and

14   3.6 hearings. *Id.*; and (f) failing to object to Detective Johnson's false testimony about a name

15   and number on a phone contact list. *Id.* at 5.

16           Under the two-prong standard of *Strickland*, a petitioner must show counsel's

17   performance was so deficient that it "fell below an objective standard of reasonableness."

18   *Strickland v. Washington*, 466 U.S. 668, 686 (1984). He must also show the deficient

19   performance so prejudiced the defense that it deprived him of the right to a fair trial and caused

20   the state court proceedings to be unreliable. *Id*. at 687. A petitioner must satisfy both prongs. *Id*.

21   at 697. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466

22   U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all

23   significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

1     *Sub-arguments (b) and (c)*

2          In these sub-arguments, petitioner contends trial counsel was ineffective for telling the

3     jurors they would hear evidence petitioner denied involvement in the crimes and that witness

4     Johnny Bryant would testify he saw the missing victims at a time not matching the state's cell-

5     phone tracking evidence. *See* Dkt. 4, Attachment at 2-3. Respondent argues petitioner failed to

6     present these claims to the Washington Supreme Court as federal claims because in petitioner's

7     statement of additional reasons he did not cite to any legal authority. Dkt. 12 at 18. The argument

8     overlooks that in seeking review in the Washington Supreme Court, petitioner's lawyer raised

9     the claim and cited to legal authority arguing the State Court of Appeals incorrectly applied

10    *Strickland v. Washington* 466 U.S. 668 (1984) in finding counsel's alleged failures did not

11    prejudice petitioner. Dkt. 13, Exhibit 10 at 345-50. The Court accordingly concludes sub-

12    arguments (b) and (c) were fairly presented to the Washington Supreme Court and is an

13    exhausted ground for relief and addresses the arguments in turn.

14          In sub-argument (b) petitioner contends trial counsel was ineffective for telling the jury it

15    would hear Avila denied any involvement in the crimes during a police interview. Dkt. 4, Exhibit

16    at 2, *Id.* The state court of appeals noted when police interviewed petitioner, he denied

17    involvement in the crime. Dkt. 13, Exhibit 3 at 33. At trial, defense counsel told the jury that

18    petitioner talked to the police and denied involvement in the crime; counsel "was later unable to

19    admit Avila-Cardenas's statement because it was hearsay." *Id.* at 34. The state court found

20    petitioner failed to show he was prejudiced by counsel's opening remark that petitioner denied

21    involvement and subsequent inability to admit the denial. *Id.* The state court found:

22              Considering the overwhelming evidence linking Avila-Cardenas to
                the murders, there is no reasonable probability that the outcome of
23              the trial would have been different if defense counsel had not
                mentioned the statement. There is also no reasonable probability

REPORT AND RECOMMENDATION - 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

> that the outcome would have been different if defense counsel had
> succeeding in introducing the statement. In the voluntary police
> interview, Avila-Cardenas stated that he returned to Washington
> on December 15, he did not have a gun, he did not have a cell
> phone, and he was not involved in the disappearance of the three
> men. The state introduced evidence that Avila-Cardenas returned
> to Washington on December 8, possess a gun and had a cell phone.
> Under those circumstances there is no substantial likelihood that
> the jury would have found Avila-Cardenas's denial of involvement
> credible.

*Id.* at 34. Petitioner's appellate lawyer argued to the Washington Supreme Court that the state court of appeals erred because to show prejudice under *Strickland v. Washington*, petitioner need not show there is "no substantial likelihood" that the jury would have found his denial credible. Dkt. 13, Exhibit 10 at 348-49. Rather, under *Strickland* petitioner must only show there is a reasonable probability that but for counsel's ineffectiveness the outcome would have been different. *Id.*

The argument fails. In the passage above the state court initially stated there is no "reasonable probability" the outcome would have been different whether defense counsel had not mentioned petitioner's statement or mentioned it and was successful in admitting it. This statement is consistent with the standard set forth in *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("*Strickland* asks whether it is 'reasonably likely' the result would have been different."). The state court did go on to also state "there is no substantial likelihood the jury would have found Avila-Cardenas's denial of involvement credible." But this statement does not replace the earlier reasonable probability standard the state court articulated. Moreover, the state court's use of phrase substantial is not inconsistent with Supreme Court law. When a *Strickland* claim is assessed in a habeas action, "[t]he likelihood of a different result must be substantial, not just conceivable," to establish prejudice. *Richter*, at 112 (citing *Strickland*, 466 U.S. at 693).

REPORT AND RECOMMENDATION - 22

1    Hence the Supreme Court in *Strickland* defined the "resonable likelihood" standard as requiring

2    a showing that the likelihood of a different result be "substantial."

3         The Court thus concludes the state court did not reject petitioner's *Strickland* claim in a

4    manner that is contrary to clearly established law as established by the Supreme Court. The claim

5    should accordingly be denied and dismissed.

6         Turning to sub-argument (c), petitioner contends in the present habeas petition that trial

7    counsel was ineffective for telling the jurors he would call Johnny Bryant as a witness; that Mr.

8    Bryant would testify to seeing the victims alive after the time the prosecution claimed they were

9    killed; for failing to secure Mr. Bryant's presence; for failing to present an argument to admit

10   Mr. Bryant's statements; and for failing to move for a mistrial when Mr. Bryant did not appear.

11   Dkt. 4, Attachment at 3.

12        After the state court of appeals affirmed petitioner's conviction, petitioner sought review

13   in the Washington Supreme Court. Petitioner's lawyer presented a narrower argument

14   contending trial counsel was ineffective for failure to move for a mistrial after Mr. Bryant failed

15   to appear, and that there is no basis to support the state court of appeals' conclusion that the

16   failure was a tactical decision. Dkt. 13, Exhibit 10 at 348. It is difficult to discern the basis upon

17   which the state court of appeals concluded petitioner's trial counsel "may have sound reasons not

18   to move for mistrial as a matter of trial strategy" after witness Bryant failed to appear. Dkt. 13,

19   Exhibit 3 at 35.

20        First the record indicated trial counsel subpoenaed Mr. Bryant and then told the jury in

21   his opening statement that Mr. Bryant would provide testimony that contradicted the states time-

22   line regarding when the murders occurred. In specific, counsel indicated Mr. Bryant would

23   testify he saw three men he thought looked like the victims in his apartment parking lot at 9:00

REPORT AND RECOMMENDATION - 23

1    pm which is after the time the state claims defendant murdered them. The record thus shows

2    petitioner's trial lawyer intended to call Mr. Bryant to present evidence that was favorable to

3    petitioner.

4         Second, trial counsel did not call Mr. Bryant to testify because he failed to honor the

5    subpoena and failed to appear to testify. The state court of appeals did not indicate there was any

6    evidence indicating trial counsel asked Mr. Bryant not to appear or that counsel had changed his

7    mind about calling Mr. Bryant. Rather, counsel's failure to call Mr. Bryant appears to be based

8    solely upon Mr. Bryant's failure to appear at trial.

9         Third, the time and place of the victims' death was evidence that was important to the

10   prosecution's case. There were no eye-witnesses to the offense and petitioner did not admit

11   committing the murders. The prosecution case rested upon circumstantial and forensic evidence.

12   The prosecution thus presented and relied upon defendant's cell-phone records as evidence that

13   connected the defendant to the time and location of the victims' deaths. Mr. Bryant's testimony

14   ostensibly contradicts the state's evidence that petitioner, as shown by cell phone records, was at

15   the time and place the victims were murdered. Mr. Bryant testified he saw three individuals who

16   looked like the victims at 9:00 pm, i.e., after the time the prosecution claimed defendant

17   murdered them. Mr. Bryant's testimony thus supported a defense that even if cell phone records

18   showed petitioner met the victims in the afternoon as the state claimed, petitioner did not murder

19   them because Mr. Bryant saw the victims still alive hours after petitioner ostensibly had contact

20   with them.

21        Because Mr. Bryant's testimony was the only evidence defense counsel possessed that

22   could possibly be used to contradict the state's cell-phone evidence placing petitioner at the time

23   and place of the murders, the state court unreasonably concluded defense counsel's failure to

REPORT AND RECOMMENDATION - 24

1    secure Mr. Bryant or call for a mistrial when Mr. Bryant failed to appear was a tactical trial

2    decision.

3        The state court of appeals also rejected the *Strickland* claim finding petitioner "fails to

4    show prejudice by demonstrating that, had counsel moved for a mistrial [because Mr. Bryant

5    failed to appear], the court would likely have granted the motion." Dkt. 13, Exhibit 3 at 35. In

6    Washington, trial courts "should grant a mistrial only when the defendant has been so prejudiced

7    that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors

8    affecting the outcome of the trial will be deemed prejudicial." *State v. Mak*, 105 Wash.2d 692,

9    701 (1986). Here, petitioner has not presented any basis to support a finding that the trial court

10    would have or should have granted a mistrial when Mr. Bryant failed to appear.

11        This is not a case that turns entirely upon Mr. Bryant's testimony. While Mr. Bryant's

12    testimony would have helped the defense blunt the prosecution's cell phone evidence, his

13    testimony would not have blunted the forensic evidence tying petitioner to the murders. The

14    prosecution presented forensic evidence the murder weapon, a firearm, was found in petitioner's

15    residence, the blood of one of the murder victims was found inside the barrel of the gun, and that

16    shell casings from the gun were found at the scene of the murder. Mr. Bryant's testimony does

17    not undermine this evidence. It is therefore not unreasonable to conclude that even if the jury

18    heard Mr. Bryant's testimony and consequently gave less weight to the cell phone evidence,

19    plaintiff would nonetheless still be convicted based upon the forensic evidence alone. Hence it

20    was not unreasonable for the state court to conclude that petitioner presents nothing showing the

21    trial court would have granted a motion for mistrial.

22        In sum, under the two-prong standard set forth in *Strickland*, petitioner must show

23    counsel performed deficiently and the deficient performance prejudiced the defense. The Court

REPORT AND RECOMMENDATION - 25

1    concludes the state court of appeals unreasonably found trial counsel's failure to obtain Mr.

2    Bryant's presence or move for a mistrial was a tactical decision.  However, the Court finds it was

3    not unreasonable for the state court to find petitioner failed to demonstrate prejudice. The Court

4    accordingly should deny the claim and dismiss it.

5            *Sub-arguments (d) – (f)*

6            Petitioner contends trial counsel was ineffective by (d) failing to obtain a material witness

7    warrant for Johnny Bryant; (e) performing poorly at the criminal Rule 3.5 and 3.6 hearings; and

8    (f) failing to object to Detective Johnson's false testimony about a name and number on a phone

9    contact list. Petitioner's appellate counsel did not seek review of these claims in the Washington

10   Supreme Court. *See* Dkt. 13, Exhibit 10. Petitioner, however, submitted to the Washington

11   Supreme Court a statement of additional reasons contending his lawyer was ineffective for

12   failing to "motion" the court for a material witness warrant for Johnny Bryant, *id.* at 415; failing

13   to call Detective Jordan to testify at the state criminal rule 3.5 hearing and failing to call

14   Detective Conlon at the state criminal rule 3.6 hearing; and by failing to object when Detective

15   Johnson "was lying to the jury by telling them that he found a contact named Alfredo on that

16   phone." *Id.* at 425.

17           Respondent argues petitioner failed to cite to any legal authority in making these

18   arguments and that petitioner therefore failed to exhaust the claims by failing to alert the

19   Washington Supreme Court he was asserting a federal constitutional claim. The contention

20   overlooks petitioner use of the phrase "ineffective assistance of counsel" which given

21   petitioner's allegations alerted the Washington Supreme Court petitioner was raising a federal

22   claim. *See Sander v. Ryder*,342 F.3d 991, 999 (9th Cir. 2003) ("Depending on the context of his

23   claim, a prisoner may alert a state court to the federal nature of the asserted right by using the

1   phrase 'ineffective assistance of counsel.'"). Moreover, petitioner did aver in the conclusion

2   section of his statement of additional reasons that his rights, including the right to effective

3   assistance of counsel, were violated under state law and the Fourth, Fifth, Sixth, and Fourteenth

4   Amendments. Dkt. 13, Exhibit 10 at 433.

5           Given the record and the Ninth Circuit's recognition that "for purposes of exhaustion, pro

6   se petitions are held to a more lenient standard," the Court finds sub-arguments (d)-(f) are

7   exhausted. *Sander*, 342 F.3d at 999. The Court accordingly addresses these claims in turn.

8           The Court has already addressed the argument raised in sub-argument (d) that counsel

9   was ineffective in failing to obtain a material witness warrant for Johnny Bryant. For the reasons

10  above, the Court denies the claim and it should be dismissed.

11          In sub-argument (e) petitioner contends his trial lawyer provided ineffective assistance of

12  counsel at the suppression hearings the trial judge conducted under Washington Criminal Rules

13  3.5 and 3.6. Dkt. 4, Attachment at 4. In specific he alleges:

14              Avila was expecting Detective Jordan for the 3.5 hearing but he
                never showed up and for the 3.6 hearing detective Conlon was also
15              expected and the state never called hi. Those two detectives gave
                contradictory statements to defense counsel. Avila's attorneys
16              proceeded with the hearings instead of requesting a NEW 3.5 and
                3.6 HEARING DATE. Avila never had the opportunity to expose
17              the dirty work of Jordan and Conlon.

18  *Id.*

19          In seeking review in the Washington Supreme Court, petitioner similarly contended his

20  attorneys "were ineffective because on my 3.5 hearing we were expecting Detective Jordan

21  who's is states main witness but Jordan never came." Dkt. 13, Exhibit 10 at 425. Washington

22  Criminal Rule 3.5 governs the procedures state law requires the trial judge to follow to determine

23  whether a criminal defendant's statements are admissible. *See* CrR3.5(a). Petitioner presents

REPORT AND RECOMMENDATION - 27

1   nothing show why Detective Jordan's failure to appear at the CrR 3.5 hearing prejudiced him.

2   This is not a case in which following the Cr.R 3.5 hearing the trial judge ruled the state could

3   present incriminating statements that plaintiff made to the police. Rather as the state court of

4   appeals noted the custodial statement taken from petitioner outside the presence of counsel was

5   not introduced at trial and that there was "no confession" evidence presented to the jury. Dkt. 13,

6   Exhibit 10 at 51, 52. The only statements introduced by the state were Detective Brunton's

7   testimony that petitioner said he was in California and did not return to Washington until three

8   days after the murders, that he did not possess or have access to a gun, and he had only two cell

9   phone: a disposable with no minutes on it and a work phone. Dkt. 13, Exhibit 6 at 244. There is

10  thus no possibility trial counsel's performance at the CrR 3.5 hearing prejudiced petitioner

11  because his statements were not introduced as evidence against him. This *Strickland* claim

12  should accordingly be denied and dismissed.

13      In seeking review in the Washington Supreme Court, petitioner also contended counsel

14  was ineffective at the CrR 3.6 motion hearing to suppress evidence because "we were expecting

15  Detective Conlon but the state never called him. Detective Conlon's statements contradicts

16  Detective Punzalon's statements who's the affiant of the search warrant."  Dkt. 13, Exhibit 10 at

17  425.

18      The search warrant affidavit in this case indicated police obtained information from Ms.

19  Miranda and that Detective Conlon contacted a reliable confidential informant. Both witnesses

20  provided information for probable cause to search a residence and vehicle associated with

21  petitioner. Dkt. 13, Exhibit 15 at 677-78. Petitioner's counsel moved to suppress the evidence

22  obtained through the search warrant arguing although there was only one reliable informant, the

23  affidavit gave the issuing judge the impression there were two reliable informants (Miranda and

the CI) who provided information supporting probable cause, *id.* at 692; the warrant fails to

provide sufficient facts to show Miranda and the confidential informant are reliable, *id* at 694-96;

and the warrant omitted exculpatory evidence such as Mr. Bryant's statement he saw three men

who looked like the victims after the time they were murdered. *Id.* at 541. Petitioner presents

nothing establishing why counsel should have called Detective Conlon, what his testimony

would amount to; why calling Detective Conlon would have changed the outcome of the CrR 3.6

hearing, or why the failure to call the Detective prejudiced the defense case. As noted above,

petitioner must show his trial lawyer's performance was deficient and that the deficient

performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 687. The Court

cannot simply presume counsel's failure to call Detective Conlon was prejudicial. In order for

the Court to presume prejudice, counsel's failures must complete. *Bell v. Cone*, 535 U.S. 685,

696-98 (2002). Here, trial counsel litigated and attempted to suppress the evidence that was

seized following a search of petitioner's residence and vehicle. This is not a complete failure to

test the prosecution's case. As petitioner has failed to establish prejudice this *Strickland* claim

should be denied and dismissed.

      Petitioner also contends in sub-argument (f) counsel was ineffective by failing to object

to Detective Johnson's false testimony about a name and number on a phone contact list. The

claim fails. As discussed under sub-argument 10(e) regarding Detective Johnson and contact

information in petitioner's cell-phone, petitioner fails to establish prejudice and the claim should

accordingly be denied and dismissed.

      Finally, petitioner also implies counsel was ineffective by not being ready trial. This

claim rests on the trial judge's denial of defense counsel's motion for a continuance. Dkt. 13,

REPORT AND RECOMMENDATION - 29

1    Exhibit 10 at 428. This claim thus focuses on a ruling by the trial judge and fails to assert facts

2    showing trial counsel was ineffective; the claim should accordingly be denied and dismissed.

3    **C.    Ground for Relief Three: Impermissible Admission of Testimony**

4        Petitioner contends State Evidence Rule ER 404(b) was violated when the trial court

5    allowed Ms. Miranda Cruz to give certain testimony. Dkt. 4, Attachment at 6. In seeking review

6    in the Washington Supreme Court, petitioner's lawyer argued the trial court violated ER 404(b)

7    and ER 403 by allowing Ms. Cruz to testify that petitioner shot a gun at her feet and erred in

8    denying defense counsel's motion for a mistrial. Dkt. 13, Exhibit 10 at 350-51. The argument

9    was thus presented as a violation of state rules of evidence and petitioner's counsel cited to

10   numerous state court decisions addressing trial court rulings that violate State Rule of Evidence

11   ER 404(b). However, "evidentiary rulings based on state law cannot form an independent basis

12   for habeas relief." *Rhoades v. Henry*, 638 F.3d 1027, 1034 n. 5 (9th Cir.2011); *see also Estelle v.*

13   *McGuire*, 502 U.S. 62, 68 (1991) (Prior injury evidence incorrectly admitted in violation of

14   California State law not grounds for habeas relief). The claim should thus be denied and

15   dismissed for two reasons. First, it was presented as a state law claim only. And second, the trial

16   judge's evidentiary rulings made under state law are not cognizable on federal habeas review.

17   **D.    Ground for Relief Four: The Admission of the statement a Codefendant gave on a
     Plea of Guilty Violated Petitioner's Sixth Amendment Confrontation Rights**

18

19       Petitioner contends the admission of co-defendant Velez-Fombona's factual statement on

20   a plea of guilty violated his Sixth Amendment right to confront witnesses. Dkt. 4, Exhibit at 9.

21   Petitioner and Velez-Fombona were arrested together. Dkt. 13, Exhibit 3 at 25. Velez-Fombona

22   pled guilty to second degree murder and petitioner went to trial. *Id.* At petitioner's trial, a police

23   officer read to the jury the following portions of Velez-Fombona's statement on plea of guilty:

1

2

3

4

5

> On or about 12-12-10, I helped two men who kidnapped Jesus
> Bejar-Avila, Yazmani Quezada-Ortiz, and Christian Alberto
> Rangel in King County. My role in the crime was to drive my car
> immediately behind the vehicle, the vehicle in which the thee were
> remaining so that no one was aware they were restrained. This
> restraint continued as I followed the car to the Rainier Nursery, in
> Kent, and my role ended. Jesus Bejar-Avila, Yazmani Quezada-
> Ortiz and Christian Alberto Rangel were then killed by the men. I
> was aware that the other two men were armed with guns.

6   *Id.,* Exhibit 20 at 1334. In the state courts, petitioner sought review in the Washington Supreme

7   Court arguing the admission of this statement violated his confrontation rights under the Sixth

8   Amendment and *Bruton v. United* States, 391 U.S. 123 (1968). *Id.,* Exhibit 10 at 340.

9        In *Bruton*, the Supreme Court held the Sixth Amendment right of confrontation is

10  violated when a facially incriminating confession of a non-testifying co-defendant is introduced

11  at a joint trial, even if the jury is instructed to consider the confession only against the co-

12  defendant. *Id.* 135. The admission of a non-testifying co-defendant's statement does not

13  automatically trigger the Sixth Amendment. Rather the admission of a non-testifying

14  codefendant's statement violates the Confrontation Clause **if** the statement facially, expressly, or

15  powerfully implicates the defendant. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001

16  (9th Cir. 2008). Thus, a statement violates the Sixth Amendment when it names and thus

17  expressly implicates a defendant or where the statement, despite redactions, obviously refer to

18  the defendant, i.e. "involve inferences that a jury ordinarily could make immediately, even were

19  the confession the very first item introduced at trial." *Gray v. Maryland*, 523, U.S. 185, 196

20  (1998). But when a confession is not incriminating on its face but is incriminating only when

21  linked with evidence introduced later at trial, the Sixth Amendment protections set forth in

22  *Bruton* do not apply. *Richardson v. Marsh*, 481 U.S. 200, 201 (1987).

23

REPORT AND RECOMMENDATION - 31

1    After *Bruton*, the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 68, (2004),

2    held the Sixth Amendment Confrontation Clause applies only to "testimonial statements."

3    Consequently, most circuit courts, including the Ninth Circuit have found *Bruton's* Sixth

4    Amendment protections apply only to "testimonial out of court codefendant statements." *Lucero*

5    *v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018) ("We agree and conclude that only testimonial

6    codefendant statements are subject to the federal Confrontation Clause limits established in

7    *Bruton*.").

8    In adjudicating petitioner's confrontation clause argument, the state court of appeals

9    observed the Sixth Amendment is violated when the statement of a nontestifying codefendant

10    facially incriminates the defendant. Dkt. 13, Exhibit 3at 25. The state court determined a

11    statement is facially incriminating if it names him or if from the statement the jury could infer

12    that it refers to the defendant "even if it were the first item introduced at trial." *Id.* The state court

13    noted during the trial, there was testimony elicited by defense counsel that Velez-Fombona

14    picked petitioner up in a Beige Yukon and pled guilty to murder. Following defense counsel's

15    line of questioning about the co-defendant, the trial court allowed the state to introduce the above

16    portion of Velez-Fombona's plea statement. *Id.* at 26.

17    The state court of appeals held the admission of Velez-Fombona's statement did not

18    violate petitioner's Sixth Amendment rights, finding Velez-Fombona's statement "provides no

19    information allowing the jury to infer that Avila-Cardenas was one of the 'two men,'" and if the

20    statement were admitted as the first item, it would not have incriminated petitioner. *Id.* at 28. The

21    state court concluded because the statement "only became incriminating when linked with

22    evidence introduced at trial, its admission did not violate the confrontation clause. *See Gray*, 523

23    U.S. at 196." *Id.*

REPORT AND RECOMMENDATION - 32

1    The state court of appeals also found even if the statement were deemed facially

2    incriminating, its admission was harmless because petitioner would have been convicted even

3    without the statement. *Id*. at 29. The state court of appeals found the "untainted evidence" in the

4    case was overwhelming. The bullet casings at the murder scene and the casing found at

5    petitioner's home were fired by a gun found in petitioner's home; the gun contained blood

6    evidence from one of the victims; and cell phone records placed petitioner in the location of the

7    victims' workplace and where their bodies were found at the relevant times. *Id.* 29-30.

8    In seeking review in the Washington Supreme Court, petitioner contended the

9    codefendant's statement incriminated him because another witness earlier testified petitioner was

10    picked up by a beige Yukon driven by the codefendant. Dkt. 20, Exhibit 4 at 49-50. In his habeas

11    petition, petitioner simply contends "the admission of Avila's co-defendant's plea of guilt

12    obviously implicated him in the crime violating his confrontation rights." Dkt. 4, Exhibit at 8.

13    Respondent argues the state court's determination is not contrary to established Supreme

14    Court law because the codefendant's statement is not facially incriminating, and there is no

15    clearly established Supreme Court law establishing the statement at issue is even testimonial and

16    thus subject to the protections of the Confrontation Clause. Dkt.12 at 33-34.

17    Here, petitioner fails to establish the state court's rejection of his claim is contrary to or

18    an unreasonable application of law that is clearly established by the Supreme Court. Assuming

19    without deciding Velez-Fombona's statement was testimonial because it falls within the core

20    class" of testimonial statements such as *ex-parte* in-court testimony or its functional equivalent,

21    *Crawford*, 541 U.S. at 52, the record nonetheless plainly shows Velez-Fombona's statement did

22    not name or obviously refer to the petitioner. The incriminating nature of the codefendant's

23    statement only arose after another witness testified petitioner and the codefendant got into the

REPORT AND RECOMMENDATION - 33

1   same vehicle, and Velez-Fombona pled guilty to murder thereby creating a link between the two.

2   The state court's rejection of the claim is thus consonant with clearly established Supreme Court

3   law because the record establishes the codefendant's statement became incriminating only when

4   "linked" with other evidence presented at trial. This determination is consistent with *Gray v.*

5   *Maryland,* discussed above, and with *Richardson v. Marsh* which held *Bruton's* protections do

6   not apply to statements that are incriminating only when linked to other evidence.

7          In sum, the state court's rejection of the confrontation clause claim is not contrary to or

8   an unreasonable application of law clearly established by the Supreme Court. To the contrary,

9   the state court determination is consistent with Supreme Court law and accordingly the

10  confrontation clause claim should be denied.

11         Additionally, Confrontation Clause violations are subject to harmless error analysis.

12  *Whelchel v. Washington*, 232 F.3d 1197, 1205-06 (9th Cir. 2000). "In the context of habeas

13  petitions, the standard of review is whether a given error 'had substantial and injurious effect or

14  influence in determining the jury's verdict.'" *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir.

15  1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Factors to be considered when

16  assessing the harmlessness of a Confrontation Clause violation include the importance of the

17  testimony, whether the testimony was cumulative, the presence or absence of evidence

18  corroborating or contradicting the testimony, the extent of cross-examination permitted, and the

19  overall strength of the prosecution's case. *Van Arsdall*, 475 U.S. at 684.

20         Here the Court cannot say the state court unreasonably found that assuming the statement

21  was not admitted, there was nonetheless overwhelming other evidence supporting petitioner's

22  conviction: bullet casings from the murder scene matched the casing and from a gun found in

23  petitioner's home; the gun had blood from one of the victims; and cell phone records placed

REPORT AND RECOMMENDATION - 34

1    petitioner at the victims' workplace and where their bodies were found at the relevant times. The

2    Court accordingly recommends the claim be denied and dismissed.

3    **E.    Ground Five: Prosecutorial Misconduct**

4        Petitioner alleges in ground five the state engaged in misconduct by (a) eliciting evidence

5    in violation of an in limine order; (b) making improper race and bias arguments; (c) arguing

6    defense counsel was obligated to continue objecting as to each instance of misconduct; and (d)

7    bribing a witness to testify against petitioner by offering her a S-Visa. Dkt. 4, Attachment at 9-

8    10. After the Washington Court of Appeals affirmed petitioner's conviction, appellate counsel

9    sought review in the Washington Supreme Court arguing the prosecutor engaged in misconduct

10   by "eliciting evidence in violation of in limine order," and making "race-and class-based

11   arguments. Dkt. 13, Exhibit 10 at 352-354.

12       Respondent contends petitioner did not present these claims as federal claims in the state

13   courts arguing counsel cited only to state cases. Dkt. 12 at 19. But citing to state cases does not

14   automatically mean a petitioner fails to exhaust a federal claim. Here, petitioner cited to *State v.*

15   *Fisher*, 165 Wn.2d 727 (2009) to support the claim that eliciting evidence in violation of an in

16   limine order constitutes misconduct. In *Fisher* the defendant argued the state committed

17   misconduct in its presentation of certain evidence and closing argument. *Id.* at 746. The

18   Washington Supreme Court stated the Sixth Amendment requires a criminal defendant to show

19   the prosecutor's conduct was both improper and prejudicial, *id.,* and concluded the defendant

20   met this test stating "[we] hold that there is a substantial likelihood that the prosecuting

21   attorney's misconduct affected the jury, thus meriting Fisher a new trial." *Id.* at 749.

22       Because the *Fisher* decision analyzed the misconduct claim applying the Sixth

23   Amendment requirement the defendant must prove prejudice, petitioner fairly presented his

REPORT AND RECOMMENDATION - 35

1    federal claim of misconduct to the Washington Supreme Court. *See Peterson v. Lampert*, 319

2    F.3d 1153, 1158 (9th Cir. 2003) ("for purposes of exhaustion, a citation to a state case analyzing

3    a federal constitutional issue serves the same purpose as a citation to a federal case analyzing

4    such an issue.").

5          Petitioner's counsel cited to *State v. Davenport*, 100 Wn.2d 757 (1984) to support the

6    claim the state made impermissible race and class comments. Dkt. 13, Exhibit 10 at 354. The

7    *Davenport* court also cited to federal law stating:

8                    In cases of prosecutorial misconduct, the touchstone of due process
                    analysis is the fairness of the trial, i.e., did the misconduct
9                    prejudice the jury thereby denying the defendant a fair trial
                    guaranteed by the due process clause? *Smith v. Phillips*, 455 U.S.
10                   209, 102 S. Ct. 940, 71 L.Ed.2d 78 (1982).

11   *Davenport,* at 762. As *Davenport* analyzed the misconduct claim before it under the U.S.

12   Constitution, petitioner fairly presented his federal claim in the Washington Supreme Court and

13   the Court discussed them in turn below.

14         Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue

15   of whether the alleged misconduct violated due process. *See Donnelly v. DeChristoforo*, 416

16   U.S. 637, 642 (1974); *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996), cert. denied, 519

17   U.S. 889, (1996). "It 'is not enough that the prosecutors' remarks were undesirable or even

18   universally condemned." *Allen v. Woodford*, 395 F.3d 979, 997 (9th Cir. 2004) (as amended)

19   (internal quotations and citations omitted), *cert. denied*, 546 U.S. 858 (2005). Misconduct is

20   reviewed in light of the entire trial record, and habeas relief may be granted only if the

21   misconduct by itself infected the trial with unfairness. *See Donnelly*, 416 U.S. at 639-43; *see also*

22   *Darden v. Wainwright*, 477 U.S. 168, 183 (1986); *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1112

23   (9th Cir. 2011) ("under *Darden*, the first issue is whether the prosecutor's remarks were

1  improper and, if so, whether they infected the trial with unfairness"), *cert. denied*, 546 U.S.

2  1110, (2006). The same standard applies to a habeas claim based on prosecutorial misconduct

3  arising from improper argument. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987); *Darden*, 477

4  U.S. at 181-83.

5          In sub-argument (a) petitioner argues the prosecution elicited evidence in violation of an

6  in limine order. The state court of appeals noted pre-trial, the trial judge ruled the prosecution

7  could ask Ms. Miranda-Cruz about petitioner firing a gun but directed "The state may not elicit

8  testimony about the gun being fired in an attempt to frighten Guadalupe Miranda or elicit details

9  about the incident that led to the firing of the gun." Dkt. 13, Exhibit 3 at 14. Defense counsel

10  moved for a mistrial after the prosecution asked Ms. Miranda where petitioner aimed the gun

11  when he discharged it and she stated: "Towards my feet." *Id.* at 37. The state court of appeals

12  rejected petitioner's argument that the prosecution violated the pre-trial ruling finding:

13              The ruling on the motion in lime admitted evidence that Avila-
              Cardenas fired the in his yard in the presence of Miranda-Cruz. It
14              prohibited evidence that Avila-Cardenas fired the fun to frighten
              Miranda-Cruz and details about what led to the incident. Miranda-
15              Cruz did not testify to the circumstances that led Avila-Cardenas to
              fire the gun or his intent in doing so. Miranda-Cruz did not violate
16              the pretrial ruling. Furthermore, even if Miranda-Cruz's statement
              as to where Avila-Cardenas fired the gun was improper, any
17              prejudice was cured by the limiting instruction. Avila-Cardenas
              fails to show a substantial likelihood that the allegedly improper
18              testimony affected the outcome of the trial.

19  *Id.* at 39; *see also id.* at 40 ("As discussed above Miranda-Cruz's testimony did not violate the

20  pre-trial ruling."). The Court cannot say the state court of appeals' finding is unreasonable in

21  light of the record.

22          Additionally, the state court of appeals found "no indication that the State deliberately

23  sought to elicit the statement that Avila-Cardenas fired towards Miranda-Cruz's feet." *Id.* at 40.

REPORT AND RECOMMENDATION - 37

1    Petitioner fails to present facts establishing the prosecution intended Ms. Miranda to violate the

2    pre-trial ruling or that the state court finding is unreasonable. The record shows the prosecution

3    informed the trial judge they told Ms. Miranda to say petitioner fired the gun "towards the

4    ground." In follow-up questions to clarify her testimony Ms. Miranda agreed with the prosecutor

5    that the gun was "fired into the grass." *Id.* at 37. The record thus indicates the prosecution did not

6    intentionally or deliberately attempt to violate the pretrial ruling. In sum, because the state court

7    findings that the motion in limine was not violated and the state did not deliberately attempt to

8    violate the in limine order are both not unreasonable, the sub-argument should be denied and

9    dismissed.

10         In sub-argument (b) petitioner argues the prosecution made improper race and bias

11   arguments "by arguing the jury convict Avila so that the racist and classist attitudes she attribute

12   to him would not succeed." Dkt. 4, Attachment at 9. The state court of appeals found "the

13   prosecutor [improperly] urged the jury to convict to demonstrate a societal lack of prejudice."

14   but that petitioner failed to show a substantial likelihood the misconduct affected the jury's

15   verdict in light of the evidence presented in the entire case. Dkt. 13, Exhibit 3 at 43. In specific,

16   the state court noted:

17              Avila-Cardenas makes no argument that the prosecutor's
               misconduct was so prejudicial that it could not have been cured
18             through instruction. And, assessing the improper argument in the
               context of the entire case, we see no likelihood that the impropriety
19             affected the jury's verdict. The prosecutor's argument concerning
               the ethnicity of the victims was improper, but there was no
20             objection to the argument and the prejudice was curable. We reject
               Avila-Cardena's claim of prosecutorial misconduct.
21

22   *Id.* at 44. In seeking review in the Washington Supreme Court, petitioner's counsel argued

23   petitioner's trial counsel's objection to the prosecutor's argument some crimes do not get much

     attention "almost as if some lives have more value than others" *see id.* at 41, preserved

REPORT AND RECOMMENDATION - 38

1   objections to the portion of the closing argument the state court of appeals found improper, and

2   further that the argument prejudiced petitioner. *Id.*, Exhibit 10 at 354-55.

3       However, petitioner fails to establish the state court's decision is contrary to Supreme

4   Court law or based upon an unreasonable determination of the facts based on the record. A key

5   factor in the prejudice analysis is the strength of the evidence against the accused. *See, e.g.,*

6   *United States v. Ruiz*, 710 F.3d 1082, 1084 (9th Cir. 2011) (finding error harmless due to

7   strength of evidence); *United States v. Bashaw*, 509 F.2d 1204, 1206 (9th Cir. 1975) ("We do not

8   condone the prosecutor's conduct.... [But] the evidence of Bashaw's guilt was overwhelming, [so]

9   we are impelled to the conclusion that the prosecutor's misconduct was legally harmless....").

10      Here petitioner in state proceedings and in this proceeding argues he has established

11  prejudice because the prosecutor made a prejudicial statement during closing arguments. This is

12  a conclusory statement and petitioner presents nothing establishing why in the context of the

13  entire case, the remark was so prejudicial that it undermined the fairness of the entire trial and

14  calls for relief. In the context of the whole trial, the Court cannot say the state court unreasonably

15  determined petitioner failed to establish prejudice. As the state court indicated, there was strong

16  evidence of petitioner's guilt: cell phone tracking placed petitioner at the times and places of the

17  victims' deaths; the murder weapon was found at plaintiff's residence with the blood of one of

18  the victim's blood inside the gun barrel; and shell casing evidence tied the gun to the murders.

19      It was thus not objectively unreasonable for the state court to conclude in the context of

20  the evidence presented, petitioner failed to demonstrate the prosecutor's statement denied him a

21  fair trial because it had a substantial impact on the jury's verdict. The claim should accordingly

22  be denied and dismissed.

23

REPORT AND RECOMMENDATION - 39

1    In sub-argument (c), petitioner argues the prosecutor committed misconduct by claiming

2    defense counsel was obligated to continue objecting for each instance of misconduct. Dkt. 4,

3    Attachment at 10. This does not state a claim for misconduct as a prosecutor may properly argue

4    whether the defense has adequately raised and preserved objections for review. In fact,

5    petitioner's counsel raised the issue in the state court of appeals as whether "The prosecutor's

6    race- and class-based arguments to convict were adequately preserved for review and extremely

7    prejudicial." Dkt. 13, Exhibit 10 (Petition for review index of arguments at 329).

8    In sub-argument (d) and sub-argument 10(a) petitioner contends the prosecution bribed

9    witness Miranda and Oscar Cruz with offers of an S-Visa in exchange for false testimony. *See*

10    Dkt. 4, Exhibit at 18. Respondent contends petitioner failed to properly exhaust the claim.

11    Petitioner presented this claim to the Washington Supreme Court in a statement of additional

12    reasons. Dkt. 13, Exhibit 10 at 416. He argued he was "prejudiced" by witness Miranda's lies,

13    the government offered her an S-Visa, and her testimony was "Bias and influenced by a promise

14    of benefits of a 'S-Visa.'" *Id.* He also claimed Miranda was impeached "at trial with her prior

15    interviews and recorded statements." *Id.* As respondent notes, the claim was raised without

16    citation to any authority. The Washington Supreme Court was not alerted petitioner was raising a

17    federal claim. Petitioner noted in the conclusion to his statement of additional arguments his

18    rights under the Fourth, Fifth, Sixth and Fourteenth Amendments were violated, but this broad

19    statement does not notify the state court as to specifically what federal violation petitioner was

20    asserting regarding Miranda's testimony.

21    Even assuming petitioner exhausted the claim, it nonetheless fails. Oscar-Cruz did not

22    testify at trial and thus there is no support for the claim Mr. Cruz testified falsely. *See* Dkt. 13,

23    Exhibit 16 at 749 (Order Denying PRP).

1    As to Ms. Miranda, petitioner contends she stated during a defense interview the

2  prosecutor and Officer Johnson offered her a S-Visa if she testified against petitioner; that

3  petitioner's lawyer did not show this evidence to the jury and the prosecutor suppressed it. *Id*.

4  However, as noted above, the state court of appeals found the government did not offer a S-Visa,

5  though they told they would do what they could to help her, and that petitioner failed to present

6  evidence establishing Ms. Miranda provided false testimony to the jury. In dismissing

7  petitioner's state PRP claim regarding this issue, the state court of appeals found to prevail on a

8  misconduct claim, petitioner must establish both improper conduct and prejudicial effect. Dkt.

9  20, Exhibit 16 at 749.

10    The state court of appeals found Ms. Miranda (described as "Miranda-Cruz) stated in a

11  defense interview immigration people provided her with paperwork and the police and

12  prosecutor told her "they would try to figure of there's any way that they can help me." *Id.* The

13  prosecution agreed in a pretrial proceeding that defense counsel could cross-examine Ms.

14  Miranda on S-Visa issues; further counsel argued to the jury Ms. Miranda was a biased and

15  compromised witness who changed her testimony at trial. *Id.* Counsel did not seek to impeach

16  Ms. Cruz on the S-Visa issue and petitioner failed to show she gave false testimony or that the

17  government acted improperly regarding her immigration status. *Id.* Petitioner has not shown the

18  state court of appeals' findings are unreasonable and thus the claim should be denied and

19  dismissed.

20    Additionally, it is not uncommon for a witness to trade testimony for lenience or some

21  benefit. *See e.g. U.S. v. LaFuente*, 54 F.3d 457 (8th Circuit 1995). Such agreements do not taint a

22  criminal conviction unless the defense was not informed of the benefit or barred from cross-

23  examining the witness about it. *See U.S. v. Bagley*, 473 U.S. 667, 682 (1985) (Prosecutor's

1    failure to respond to a *Brady* request may impermissibly impair the adversary process). Here,

2    defense counsel was fully aware of the communications between the government and Ms.

3    Miranda and had the opportunity to cross-examine her on the issue. Consequently, there is no

4    basis to conclude a *Brady* or *Bagley* violation occurred.

5          The Supreme Court has also not clearly established the government engages in

6    misconduct by offering a benefit to a witness in a criminal case. Hence the offer of the S-Visa,

7    itself, to Ms. Miranda does not constitute misconduct and the state court of appeals'

8    determination is accordingly not contrary to or an unreasonable application of law clearly

9    established by the Supreme Court. Further, the state court of appeals found the other witness,

10   Oscar Cruz, never testified at petitioner's trial. Because Mr. Cruz did not testify against

11   petitioner, there is no possibility he gave perjured testimony against petitioner as the jury never

12   heard from Mr. Cruz. The Court accordingly concludes petitioner's misconduct claims should be

13   denied and dismissed.

14         Because petitioner did not articulate clearly the nature of the federal claim he was

15   presenting to the state courts, the Court has considered a slightly different claim that he raised in

16   the petition he filed in the Washington Supreme Court in seeking review of his PRP. There

17   petitioner argued the government engaged in misconduct by presenting Miranda's false

18   testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) (The Fourteenth Amendment is

19   violated where a conviction is obtained through use of false testimony known by the

20   prosecution). *Id*., Exhibit 17 at 762.

21         However as noted above, the state court of appeals' decision found petitioner failed to

22   show the government acted improperly regarding Miranda's immigration status. *See* Dkt. 13,

23

REPORT AND RECOMMENDATION - 42

1   Exhibit 16 at 749. Rather, the State Court of Appeals found Miranda told petitioner's defense

2   counsel:

3           Immigration people had provided her with some immigration
            paperwork . . . not because I'm going to be a witness of anything, .
4           . . and the police and prosecutor told her they would 'try to figure
            out if there's any way that they can help be' because 'something
5           could happened to my children' if I was forced to return to my
            home state.

6   *Id.* The State Court of Appeals further found petitioner did not show Miranda-Cruz provided

7   false testimony." *Id.* Hence even if the Court assumed the state courts recognized petitioner was

8   raising a *Napue* Fourteenth Amendment claim, the claim fails because there is nothing showing

9   the state courts erroneously found petitioner failed to establish the prosecution knowingly called

10  Miranda to provide false testimony or bribed her to provide false testimony.

11          **Ground Six: Cumulative Error**

12          Petitioner contends the cumulative effect of "prosecutorial misconduct and all the errors"

13  violated his federal constitutional rights. Dkt. 4, Attachment at 11. Petitioner did not seek review

14  of this claim following direct review or after his PRP was denied and dismissed. The claim was

15  never presented to the Washington Supreme Court, is unexhausted and should be denied and

16  dismissed.

17          **Ground Seven: The Trial Judge Violated Petitioner's Due Process Rights by
            Increasing Punishment Based Upon Petitioner's Right Against Self-Incrimination.**
18

19          Petitioner contends his right to due process and to not incriminate himself were violated

20  when the trial judge imposed the maximum sentence based in part on petitioner's lack of

21  remorse. Dkt. 4, Exhibit at 11. Petitioner contends he "cannot show REMORSE" for something

22  he did not do. *Id.* The state court of appeals rejected the argument finding the sentencing court

23  may impose any sentence it deems appropriate under the statutory standard range sentence after

REPORT AND RECOMMENDATION - 43

1    allowing arguments from the parties and hearing from witnesses. Dkt. 13, Exhibit 3 at 45. At

2    sentencing, petitioner told the trial judge his "hands and conscience were clean," and "lamented

3    that was unable to present evidence about the victims because of the 'way the system was

4    designed.'" *Id.* at 45-46. In imposing sentence, the trial judge stated he does not "punish people

5    for maintaining their innocence," but petitioner showed "no remorse whatsoever for the

6    horrendous harm that he caused," and that the Court thus takes "the lack of remorse into

7    consideration." *Id.* at 46. The trial judge went on to state:

8            But what really influences the Court more than that [lack of
             remorse] is the brutality of the crime that was committed, the
9            cruelty that was part of this. The fact that three young men were
             kidnapped, they had their hands bound, they were stuffed into the
10           back of a pickup truck and they were transported to their death and
             then they were executed in cold blood. The Court cannot imagine a
11           more cold-blooded, horrendous crime than this.  There are no
             mitigating circumstances.  This was a crime that was carefully
12           planned, smoothly executed, and as a result three young men were
             taken away from their families from their loved ones and while
13           their suffering was intense was suffering of the -- but stopped
             when they were killed but the suffering of families and their loved
14           ones continues and so while this court does not readily impose the
             maximum because the Court usually finds some mitigating
15           circumstances this is one of those cases where the Court believes
             that the maximum sentence is justified.
16
     *Id*. at 46.
17
             The state court of appeals concluded petitioner's claim he was penalized by failing to
18
     show remorse was meritless because petitioner was not compelled to speak or utter the words
19
     "that disparaged the victims and disputed the credibility of their families." *Id.* Petitioner's habeas
20
     petition and exhibit present no authority establishing the state court's determination is contrary to
21
     or an unreasonable application of law clearly established by the Supreme Court. *See* Dkt. 4 at 11.
22
             The Court also rejects the argument petitioner raised in seeking review in the Washington
23
     State Supreme Court. There, petitioner contended he was being punished for what the law

REPORT AND RECOMMENDATION - 44

1    allowed him to do under *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). However, the Court in

2    *Bordenkircher* addressed whether the Due Process Clause of the Fourteenth Amendment is

3    violated when a state prosecutor carries out a threat made during plea negotiations to recharge

4    the accused on more serious charges if he does not plead guilty to the offense with which he was

5    originally charged. *Id.* at 358. The Supreme Court found the prosecutor's conduct of openly

6    presenting the defendant with the unpleasant alternatives of forgoing trial or facing charges on

7    which he was plainly subject to prosecution, did not violate the Due Process Clause of the

8    Fourteenth Amendment. *Id.*at 365. The *Bordenkircher* decision did not address petitioner's

9    habeas claim which involves his conduct at a sentencing hearing and whether the sentencing

10   judge may consider petitioner's conduct in imposing sentence. Hence *Bordenkircher* does not set

11   forth clearly establish Supreme Court law that supports petitioner's claim or shows the state

12   court's ruling is unreasonable.

13        The Supreme Court has not yet clearly held a sentencing court cannot consider a

14   defendant's lack of remorse at sentencing. *See Garfias-Ortega v. Ryan*, No. 13-1450, 2014 WL

15   3516919 at * 30 (D. Ariz., July 16, 2014) ("The Supreme Court has never "clearly established"

16   that a sentencing court may not make an adverse inference from a defendant's lack of remorse at

17   sentencing."). In a case closer to petitioner's habeas claim, *Mitchell v. United States*, 526 U.S.

18   314 (1999), the Supreme Court held the sentencing judge may not hold a defendant's silence

19   against him or her to determine the facts of the offense because this impinges upon the

20   defendant's right to remain silent and not be compelled to provide self-incriminating statements.

21   *Mitchell* is inapplicable because in petitioner's case, the sentencing judge did not hold

22   petitioner's **silence** against him or compel petitioner to make a statement. Instead the judge

23   stated he considered petitioner's statements to the court including his lack of remorse. Further

1  the state court of appeals found petitioner disparaged the victims and disputed the credibility of

2  their families. These findings are not disputed and thus establish the sentencing judge did not

3  penalizing petitioner merely because he was maintaining his innocence.

4        Additionally, the Supreme Court in *Mitchell* "express[ed] no view" on "[w]hether silence

5  bears upon the determination of a lack of remorse, or upon acceptance of responsibility...." *Id.* at

6  330. Hence the Supreme Court has not "clearly established federal law" that was violated by the

7  trial judge's consideration of petitioner's lack of remorse whether the product of silence or an

8  overt statement.

9        The Supreme Court has also not held the consideration of a defendant's lack of remorse

10  at sentencing is a structural error requiring automatic reversal. Rather, the Supreme Court has

11  acknowledged that sentencing errors are subject to review for harmlessness. See *Brecht v.*

12  *Abrahamson*, 507 U.S. 619, 629–30 (1993) (improper comment on defendant's post-Miranda

13  silence was reviewed for harmlessness); *Washington v. Recuenco*, 548 U.S. 212, 221–22 (2006)

14  (Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is

15  not structural error; therefore, it is subject to harmless-error analysis.). Under *Brecht,* an error is

16  harmless unless it "'had substantial and injurious effect or influence in determining the jury's

17  verdict.'" *Brecht*, 507 U.S. at 631.

18        In this case the record establishes lack of remorse was only one of several factors the trial

19  judge considered. It was not the driving factor. Rather the trial judge specifically stated what

20  really influenced him in imposing the maximum sentence was the "brutality" and "cruelty" of the

21  crimes. The manner in which the trial judge pronounced the sentences establishes the trial judge

22  would have imposed the maximum sentence even if he had not considered petitioner's "lack of

23  remorse."  Because the trial judge's consideration of lack of remorse did not have a substantial

1    and injurious effect on the sentence he determined should be imposed, the Court concludes

2    ground for relief seven, should be denied and dismissed.

3         **Eight:  Deficient Search Warrant**

4         Petitioner raises numerous arguments the search warrant in the case is invalid and how

5    the trial court thus erred in failing to suppress evidence obtained through the warrant. Dkt. 4,

6    Attachment at 11-14. As respondent correctly notes Fourth Amendment claims are not

7    cognizable in a habeas action where petitioner has an opportunity for full and fair litigation of the

8    claim. In such an instance "a state prisoner may not be granted federal habeas corpus relief on

9    the ground that evidence obtained in an unconstitutional search or seizure was introduced at his

10   trial."  Dkt. 12 at 20 citing *Stone v. Powell*, 428 U.S. 465, 493 (1976). A petitioner need not have

11   actually litigated the Fourth Amendment claim in state court. *Powell* bars habeas review of such

12   claims so long as the petitioner had the "opportunity" to litigate his claims. *Id*. at 482, 494. *See*

13   *also Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990) (whether or not petitioner did, in

14   fact, litigate his fourth amendment claim in state court, he had the opportunity to do so).

15        Washington law provides for a full and fair opportunity to litigate Fourth Amendment

16   claims. *See* Wash. CrR 3.6 (Hearings to suppress physical, oral, or identification evidence.).

17   Here, petitioner availed himself of this opportunity and the trial court conduct a hearing under

18   CrR 3.6. Petitioner also had the opportunity to raise the issue in the state court of appeals and the

19   Washington Supreme Court. The Court accordingly concludes petitioner's Fourth Amendment

20   search warrant claims are barred and should be denied and dismissed.

21        **Ground Nine: Firearm (Toolmark) and Cellphone Evidence were Misleading and Should have been Suppressed.**

22        Petitioner contends the trial judge should have suppressed the testimony an expert gave

23   regarding comparisons between shell casings and a firearm found at his residence. Dkt. 4,

REPORT AND RECOMMENDATION - 47

Attachment at 15. He claims the testimony was an opinion not proof. *Id.* As respondent correctly notes petitioner did not alert the Washington Supreme Court these allegations involved a federal claim. The claim is thus unexhausted. Moreover, as noted above, "evidentiary rulings based on state law cannot form an independent basis for habeas relief." *Rhoades v. Henry*, 638 F.3d 1027, 1034 n. 5 (9th Cir.2011). Here petitioner argues the expert's testimony is not "proof." The trial judge admitted the expert's testimony noting the issue defense counsel was raising about the expert "has to do with the weight of the testimony." Dkt. 13, Exhibit 20 at 978. This is an evidentiary decision based upon state law and the claim should accordingly be denied and dismissed.

### Ground for Relief Ten: Governmental Engaged in Misconduct.

#### 10(b)   Other Suspect Evidence

Petitioner contends the trial judge erred in denying a defense motion in limine to permit evidence of the lifestyles of the victims. Dkt. 4, Attachment at 18. The claim fails. A trial judge's rulings regarding the admissibility of evidence based upon state law are not grounds to establish governmental misconduct. Otherwise, every ruling a petitioner disagreed with would be basis for habeas relief. As discussed above, state law evidentiary rulings, are not a cognizable basis for federal habeas relief. The claim should therefore be denied and dismissed.

#### 10(c)   Zip-Tie Evidence

Petitioner contends the prosecutor engaged in misconduct by telling the jury petitioner bought zip-ties "but never proved it." *Id.* Petitioner does not dispute zip-ties were used during the murders of the three victims. However, in seeking review in the Washington Supreme Court, petitioner contended the prosecution engaged in misconduct because "the state did not

1   conclusively link those zip-ties to Alberto Avila." Dkt. 13, Exhibit 10 at 420. This claim does not

2   establish the prosecution engaged in misconduct.

3       A prosecutorial misconduct claim requires a showing the government engage in conduct

4   that so infects "the trial with unfairness as to make the resulting conviction a denial of due

5   process." *Donnelly v. DeChristoforo*, 416 U.S. at 643. To constitute a due process violation, the

6   prosecutorial misconduct must be "'of sufficient significance to result in the denial of the

7   defendant's right to a fair trial.'" *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting

8   *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

9       Here, petitioner fails to show misconduct. The prosecution did not intentionally tell the

10  jury in opening statements zip-ties were used knowing there was no evidence zip-ties were used.

11  There is thus no evidence the prosecution was attempting to infect the trial by inflaming the jury

12  with arguments that had no relationship to the evidence. Rather, there is no dispute zip-ties were

13  used in the murders and that the jury was going to inevitably hear about zip-tie evidence

14  regardless of what the prosecution said in opening remarks. Petitioner argues there is no

15  conclusive link showing the zip-ties used in the case were purchased by him at a local Lowe's

16  store. But the prosecution is entitled to show the zip-ties which were used in the murder could be

17  obtained locally in order to fend off any contention the victims were bound with zip-ties that

18  could not be obtained locally, and ergo petitioner could not have been involved. The

19  prosecution's attempt to present this evidence to support its case, even if circumstantial, does not

20  constitute misconduct. At best, petitioner's argument regards the strength of the evidence

21  presented, not the propriety of the prosecutor's conduct. The claim should accordingly be denied

22  and dismissed.

23      ***10(d):  The State Violated Petitioner's Sixth Amendment Rights***

REPORT AND RECOMMENDATION - 49

1    Petitioner contends the state violated his Sixth Amendment rights by obtaining a

2   custodial statement in the absence of his lawyer in violation of *United States v. Martinez*, 972

3   F.2d 1100, (9th Cir. 1992). Dkt. 4, Attachment at 19. Petitioner asked the Washington Supreme

4   Court to accept review arguing *Martinez* was violated. Dkt. 13, Exhibit 10 at 421. The *Martinez*

5   decision does not support relief. The *Martinez* decision recognizes obtaining a statement from a

6   criminal defendant in violation of the Sixth Amendment may support suppression of the

7   statement. The district judge in *Martinez's* case recognized this and suppressed *Martinez's*

8   statements. The Ninth Circuit reversed the suppression order finding the record was not

9   sufficiently developed to sustain suppression. *Martinez*, 972 Fed.2d at 1105 ("We therefore

10  vacate the district court's order and remand for further factfinding."). Here, the state court of

11  appeals found "The challenged statement [petitioner made] was not introduced at trial. Because

12  the statement was not used against him, Avila-Cardenas fails to show prejudice." Dkt. 13,

13  Exhibit 3 at 51.

14    Petitioner argued the Washington Supreme Court should accept review because his

15  statement was used against him citing to "2RP-57-60, 63." Dkt. 13, Exhibit 10 at 421. However,

16  these portions of the state record involve the state CrR 3.5 hearing [Confession procedure] the

17  trial court conducted. *See* Dkt. 13, Exhibit 1163-1230. The portions of the record petitioner relies

18  upon does not show his statements were used against him, i.e. presented to the jury as evidence

19  of guilt, as he claims, or that it was unreasonable for the state court of appeals to find that

20  petitioner's statements were not introduced at trial and that petitioner was accordingly not

21  prejudiced. The Court therefore recommends the claim be denied and dismissed.

22    ***10(e):  Detective Johnson Lied to the Jury.***

23

REPORT AND RECOMMENDATION - 50

1    Petitioner contends Detective Johnson lied when he testified he found the "co-defendants

2    phone number in the contact list on the phone in evidence." Dkt. 4, Exhibit at 20. Petitioner

3    argues the prosecution did not show the actual phone list to the jury and when Detective Johnson

4    called the number he found it was a different person. *Id.* Petitioner claims the prosecution

5    "planted a number on the contact list. *Id.* The state court of appeals rejected the claim finding

6    petitioner presented no evidence supporting this claim. Dkt. 20, Exhibit 16 at 750. Petitioner

7    does not specifically contest this finding and instead makes conclusory allegations the co-

8    defendants' numbers are not in his phone contact list and that the prosecution planted the

9    evidence. As petitioner has failed to establish the state court's findings are an unreasonable, the

10   claim should be denied and dismissed.

11   Additionally, petitioner's arguments disregard the existence of other cell-phone evidence

12   which was presented to the jury and support his conviction. The prosecution introduced phone

13   records that showed phone calls were made between petitioner and the codefendants and which

14   also showed petitioner's phone was at the victims' jobsite when they were kidnapped, at the

15   nursery where they were murdered, near the location of a truck used in the crime and which was

16   abandoned, and then back to his home. Dkt. 13, Exhibit 21 at 1057.

17   As noted above, trial error is reviewed for harmlessness and an error is harmless unless it

18   had substantial and injurious effect or influence in determining the jury's verdict. Here defense

19   counsel did not argue the government planted call contact evidence on petitioner's phone or the

20   police lied about the contact information contained in the phone. Rather defense counsel argued

21   there was no direct evidence the phone was plaintiff's or that plaintiff used the phone on the day

22   the three victims were kidnapped and murdered. *See* Dkt. 13, Exhibit 21 at 1015-49. The defense

23   made this argument because the cell-phone provider's records clearly established contacts

REPORT AND RECOMMENDATION - 51

1    between the petitioner's phone and the co-defendants and placed the phone at the locations were

2    the victims were kidnapped, killed, and where a vehicle used in the crime was abandoned. The

3    cell-phone provider's records thus tied petitioner's phone to the crimes, notwithstanding what

4    was found on petitioner's phone itself. Under these circumstances, the testimony about what was

5    contained in petitioner's phone contact list did not have a substantial and injurious effect in

6    determining the jury's verdict. The Court accordingly concludes this ground for relief should be

7    denied and dismissed.

8        ***10(f): The Interpreters were not Certified***

9          Petitioner contends police officers who conducted witness interviews "don't speak

10   Spanish and they are not 'Certified Court Interpreters,' and that petitioner was therefore

11   prejudiced. Dkt. 4, Attachment at 20. In seeking review in the Washington Supreme Court,

12   petitioner claimed Detective Puzalan interviewed witness Miranda even though he is not a

13   certified interpreter, and that Officer Hector and Detective Catlett interviewed petitioner

14   although they are not certified interpreters. Dkt. 13, Exhibit 10 at 427. The Court of Appeals

15   rejected these claims finding petitioner failed to present any evidence of prejudice. Dkt. 13,

16   Exhibit 3 at 51.

17         Petitioner fails to present anything establishing the court of appeals' finding is

18   unreasonable or incorrect. As discussed above, the trial court suppressed statements petitioner

19   made to the police officers; therefore, the officer's lack of certification in no way prejudiced

20   petitioner. Petitioner also was not prejudiced by the statements Ms. Miranda made to police

21   officers. This is evident because Ms. Miranda was also interviewed by petitioner's defense team

22   and testified at trial. Petitioner's defense team thus had ample opportunity to alert the jury if

23   there was any miscommunication, based upon a lack of a certified interpreter, between Ms.

REPORT AND RECOMMENDATION - 52

Miranda and the police officers who interviewed her; present to the jury anything favorable Ms. Miranda said in the defense interview; or impeach Ms. Miranda if she made inconsistent or contradictory statements. Petitioner was thus not merely stuck with statements Ms. Miranda supposedly mistakenly gave based upon an interpretation problem. Moreover, there is no evidence the lack of interpreter certification led to any misunderstanding or miscommunication between Ms. Miranda and the statements she made to the police. As petitioner has failed to show the state court's findings are incorrect or unreasonable, the claim should be denied and dismissed.

**Ground for Relief Eleven:  The Murder Weapon was Mishandled and Should have been Suppressed Due to a Lack of a Proper Chain of Custody.**

Petitioner contends the murder weapon should have been suppressed because it was mishandled and contaminated by the state. Dkt. 4, Exhibit at 20-21. He argues police evidence custodian Dallas Allen stated in a defense interview that he handled the murder weapon and bullets without gloves "which shows gross negligence and veracity of the chain of custody on vital evidence." *Id.* Petitioner contends this witness was subpoenaed but failed to appear at trial.

The state court of appeals rejected the chain of custody claim. The state court found Officer Conlon testified he found the firearm (murder weapon) during a search of petitioner's residence and identified the gun introduced into evidence as the gun he found. Dkt. 13, Exhibit 16 at 747. The state court concluded Officer Conlon's testimony satisfied the foundational requirements for chain of custody necessary to admit the gun into evidence. *Id.*

Petitioner provides no support for the notion that all witnesses who examine a gun must testify to satisfy the chain of custody requirement and has thus failed to show the state court determination is contrary to law clearly established by the Supreme Court. Further as noted above, to the extent this claim challenges an evidentiary ruling—the trial judge's admission of

REPORT AND RECOMMENDATION - 53

1    the gun—the claim is not cognizable in a federal habeas action. Additionally, petitioner has not

2    shown how he was prejudiced by the manner which Dallas Allen handled the gun, and thus any

3    error the state court committed is harmless under the *Brecht* standard.

4            Petitioner also argued in the state courts that DNA expert Marion Clark testified the DNA

5    on the murder weapon was contaminated and mishandled by the police and firearm analyst. Ms.

6    Marion testified at trial that even if the police had touched the gun with their bare hands, that

7    would not "put Christian Rangel's DNA [the victim's DNA] inside the barrel of the gun. *Id.*,

8    Exhibit 20 at 895. Her testimony does not undermine the state court's analysis that a proper

9    foundation for chain of custody was established through the testimony of Officer Conlon, and it

10   does support petitioner's theory the DNA of the victim which was found inside the barrel of the

11   gun was tainted and should have been excluded. The Court accordingly finds the state court of

12   appeals determination is not contrary to or an unreasonably application of law clearly established

13   by the Supreme Court or based upon an unreasonable determination of the facts. The claim

14   should accordingly be denied and dismissed.

15           **Ground for Relief Twelve: Defense Counsel did not ask for a Material Witness
             Warrant for Johnny Bryant**

16

17           Petitioner contends his trial lawyer was ineffective because he failed to ask for a material

18   witness warrant when Johnny Bryant, a subpoenaed witness, failed to appear for trial. Dkt. 4,

19   Attachment at 21. In denying petitioner's PRP, the state court of appeals noted Mr. Bryant told

20   the police the photos contained in a flyer about the missing victims looked like three men

21   standing in his apartment complex parking lot at 9:00 pm on the day the victims went missing.

22   Dkt. 13, Exhibit 16 at 751. Petitioner contends Mr. Bryant's testimony contradicted the state's

23   argument that petitioner and others had murdered the victims earlier in the day. *Id.* at 752. The

     state court of appeals rejected the argument on the grounds the decision to call a witness is

REPORT AND RECOMMENDATION - 54

1  generally presumed to be a matter of legitimate trial tactics and petitioner failed to overcome the

2  presumption because there was evidence in the record casting doubt on the accuracy of Mr.

3  Bryant's testimony. *Id.*

4  Respondent contends petitioner failed to exhaust this ground for relief by failing to cite to

5  the U.S. Constitution in seeking review. The record supports this. In his motion for review,

6  petitioner couched the argument as "petitioner's lawyer didn't get a warrant from the judge to

7  bring him [Mr. Bryant] to trial" and "Mr. Bryant's testimony clearly contradicts the state's time

8  line. Dkt. 13, Exhibit 17 at 764. Petitioner does not provide federal authority in support and does

9  not state he was denied "effective assistance of counsel." In the conclusion section of the

10  motion, petitioner cites to the "5th, 6th, and 14th amendment rights to due process, equal

11  protection and a fair trial," but omits any mention of the denial of effective assistance of counsel.

12  *Id.* at 766. Because petitioner failed to alert the Washington Supreme Court of the federal

13  constitutional basis of the claim, the claim is unexhausted and should be denied and dismissed.

14  The Court notes that even assuming the ground for relief is exhausted, it fails. This is

15  because petitioner must show counsel's failure to obtain the material witness warrant not only

16  fell below the standard of competent representation but that it was also prejudicial. The state

17  court of appeals held that the failure was not prejudicial "given overwhelming evidence of Avila-

18  Contrera's guilt." As noted above, the court cannot say that it was unreasonable for the state

19  court to make this finding because the record shows the murder weapon was found at petitioner's

20  residence, shell casings retrieved at the shooting matched the murder weapon, and blood from

21  one victim was found inside the barrel of the gun used in the murders. The claim should

22  accordingly be denied and dismissed.

23  **Ground for Relief Thirteen: No Contact Order with Ms. Miranda**

1    Petitioner contends the government engaged in misconduct by obtaining an order

2    prohibiting contact between witness Ms. Miranda and petitioner. Dkt. 4, Attachment at 22. He

3    further claims the no-contact order was obtained so the state could bribe Ms. Miranda to testify

4    against him in exchange for a S-Visa. *Id.* Respondent contends the ground for relief is

5    unexhausted. The record shows petitioner did not contend his federal constitutional rights were

6    violated by the no-contact order. As the Washington Supreme Court was not alerted to a federal

7    claim, the ground for relief is unexhausted and should be denied and dismissed.

8    Additionally, the state court of appeals rejected the claim as unfounded and unsupported,

9    finding petitioner presented no evidence Ms. Miranda was bribed to give false testimony against

10    petitioner. Dkt. 13, Exhibit 16 at 753. In seeking review in the Washington Supreme Court on the

11    claim, petitioner contended he "believes the reason for the no-contact order was to turn Ms.

12    Miranda against petitioner and use her at trial." Dkt. 13, Exhibit 17 at 765. In his habeas petition

13    petitioner contends the no-contact order prejudiced him and that the state court of appeals

14    ignored evidence petitioner presented. Dkt. 4, Attachment at 22. But the evidence petitioner

15    contends the state court ignored does not show the government bribed Ms. Miranda or sought the

16    no-contact order so it could bribe her. *See* Dkt. 13, Exhibit 13 at 526-538. Rather these exhibits

17    contain interview notes indicating Ms. Miranda did not request the no-contact order and copies

18    of motions filed by petitioner's counsel to modify the no-contact order and the court's order. *Id.*

19    In short, petitioner has failed to establish the state court finding regarding the no-contact order is

20    incorrect or unreasonable and the claim should therefore be denied and dismissed.

21    **Ground for Relief Fourteen: Hair Samples (DNA) and Fingerprints**

22    Petitioner contends the state failed to send hair sample "out of state" for DNA testing and

23    that he was prejudiced because the DNA test results could "prove the truth." Dkt. 4, Attachment

at 22. He also contends a witness testified the fingerprints found on the murder weapon were not petitioner's fingerprints. *Id.* Respondent contends these claims are unexhausted because petitioner failed to present these claims as federal claims; additionally, respondent contends petitioner never presented the fingerprint claim to the Washington Supreme Court at all. Dkt. 12 at 22-23. The record supports respondent's contention.

The record shows petitioner argued to the Washington Supreme Court:

> HAIR SAMPLES WERE NOT TESTED The expert witness Marion Clark chose not to send hair samples out of the state for testing in a multiple homicide case. Why? See Exhibits 23 and 24.

Dkt. 13, Exhibit 17 at 765. The record thus shows petitioner never provided federal grounds in support of the claim, and that he also never presented the fingerprint claim to the Washington Supreme Court. The claim should therefore be denied and dismissed as unexhausted.

**Ground Fifteen: Speedy Trial**

Petitioner contends his lawyer, the prosecutor and trial judge colluded to continue petitioner's trial date without his consent to bribe witnesses, fabricate evidence and hide exculpatory evidence. Dkt. 4, Attachment at 23. In seeking review of the denial of his PRP, petitioner contended "Petitioner's speedy trial rights were violated from the very first hearing. Petitioner never signed a speedy trial waiver, however the judge granted continuances without petitioner's consent. See Exhibit 25." Dkt. 13, Exhibit 17 at 766. Because petitioner did not claim his federal rights were violated he failed to alert the Washington Supreme Court that he was asserting a federal claim. Moreover, petitioner filed Exhibit 25 in the state court of appeals, not the Washington Supreme Court. Dkt. 13, Exhibit 13 at 550. If the Washington Supreme Court examined Exhibit 25, it would find two orders the trial court entered regarding status conferences and waivers of time for trial, citing to state criminal rule CrR 3.3 as governing the

time for trial. *Id.* There is no indication in the orders that the Sixth Amendment was discussed when the Court entered the orders continuing petitioner's trial, and the orders' reference to CrR 3.3 gives the impression the violation alleged is a violation of state law, not the United States Constitution. The Court accordingly concludes petitioner failed to fully and fairly present the claim as a federal claim to the Washington Supreme Court; the claim is unexhausted and should accordingly be denied and dismissed.

Even assuming the claim is exhausted, it should nonetheless be dismissed. As the state court of appeals noted, petitioner failed to present anything establishing that the delay in trial resulted in actual or substantial prejudice or involved circumstances amounting to a miscarriage of justice. Dkt. 13 Exhibit 16 at 755-57. Rather petitioner argues in a conclusory manner that witnesses were bribed, evidence was fabricated, and exculpatory evidence was hidden without presenting any evidence in support. The Court accordingly finds the state court's determination that petitioner failed to establish prejudice regarding this claim cannot be deemed to be incorrect or unreasonable. The claim should accordingly be denied and dismissed.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge.  A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A prisoner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

REPORT AND RECOMMENDATION - 58

1    Under this standard, the Court finds that no reasonable jurist would disagree petitioner's

2    claims are premature as he has not yet been convicted and has not yet exhausted his claims in the

3    state courts. Additionally, no reasonable jurist would disagree that a federal court should abstain

4    from interfering with petitioner's pending criminal charges and dismiss the case as petitioner

5    requests. Petitioner should address whether a COA should issue in his written objections, if any,

6    to this Report and Recommendation.

7                                                     **CONCLUSION**

8    For the foregoing reasons the Court recommends (1) Petitioner's habeas petition be

9    denied and dismissed; (2) Issuance of a certificate of appealability be denied; and (3) petitioner's

10   motion, Dkt. 17, to conduct discovery, expand the record and conduct an evidentiary be denied.

11   The Court should also deny petitioner's motion for appointment of counsel because there

12   is no right to have counsel appointed in cases brought under 28 U.S.C. §2254, unless an

13   evidentiary hearing is required, or such appointment is "necessary for the effective utilization of

14   discovery procedures." See *McCleskey v. Zant*, 499 U.S. 467, 495 (1991); *United States v.*

15   *Duarte-Higareda*, 68 F.3d 369, 370 (9th Cir. 1995); Rules for Section 2254 Cases in the United

16   States District Courts 6(a) and 8(c).  In deciding whether to appoint counsel, the Court "must

17   evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate

18   his claims pro se in light of the complexity of the legal issues involved." *Id.* Here, the habeas

19   should be dismissed, and the likelihood of success is poor. Petitioner filed a serviceable petition,

20   asserting grounds for relief with which he is familiar, and has also shown the ability to litigate

21   his own case. Further as discussed above, the Court finds an evidentiary hearing should not be

22   granted and discovery should not be ordered.

23

1    Given all the circumstances of the case, the Court recommends petitioner's motion to

2 appoint counsel be denied.

3                              **OBJECTIONS AND APPEAL**

4    This Report and Recommendation is not an appealable order. Petitioner should thus not

5 file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the

6 assigned District Judge enters a judgment in the case.

7    Objections, however, may be filed and served upon all parties no later than **February 14,**

8 **2020.** The Clerk should note the matter for **February 14, 2020**, as ready for the District Judge's

9 consideration if no objection is filed. If objections are filed, any response is due within 14 days

10 after being served with the objections. A party filing an objection must note the matter for the

11 Court's consideration 14 days from the date the objection is filed and served. The matter will

12 then be ready for the Court's consideration on the date the response is due.

13    Objections and responses shall not exceed 15 pages. The failure to timely object may

14 affect the right to appeal.

15    DATED this 31st day of January, 2020.

16

17    _____

18    BRIAN A. TSUCHIDA
      Chief United States Magistrate Judge

19

20

21

22

23

REPORT AND RECOMMENDATION - 60